# MARCH, 1911.

HATTIE RADLEY ET AL. v. MAGDALENE KNEPFLY ET AL.

No. 2134.   Decided March 1, 1911.

**1.—Insufficient Evidence—Peremptory Charge.**

Where the evidence is insufficient in law to authorize a finding for plaintiff, the court should direct a verdict for defendant; he is not required to submit the cause to them on a mere scintilla of evidence to support an issue of fact. (Pp. 134, 135.)

**2.—Same—Negligence—Death—Causal Connection.**

Evidence considered in case of death of a lodger leaping from a burning building to escape the flames, and held insufficient to show that the negligence alleged against defendant, the proprietor—which was a failure to provide a fire escape at each end. of the building as required by city ordinance—was a cause of the failure of deceased to escape. (Pp. 131-135.)

**3.—Same—Case Stated.**

The evidence showed that when deceased was aroused by the alarm of fire exit from the door of his room and access to the hall and the fire escape at the south end of it was cut off by flames: he was killed in leaping from the window; had there been a fire escape at the north end of the building, absence of which was the only negligence charged, it could have then been reached by him only by breaking through the doors of intervening rooms; in the absence of evidence indicating that in such event he would have attempted so to reach it and could have

done so, which the proof rendered improbable, there was no evidence that his death could have been averted had such additional fire escape been provided, and an instruction to find for defendant was properly given.   (Pp. 131-135.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

Mrs. Radley and others sued Mrs. Knepfly, and appealed from a judgment for defendant. This being affirmed they obtained writ of error.

*M. L. Morris* and *Crow & Donaldson,* for plaintiffs in error.—The facts being not of a conclusive nature and being not of such a character as leaves no room for ordinary minds to differ as to the conclusions to be drawn from them, it was the duty of the trial court to submit the issues to the jury. Railway Co. v. Gasscamp, 69 Texas, 545-7; Lee v. Railway Co., 89 Texas, 584; Choate v. Railway Co., 90 Texas, 82.

*Carden, Starling & Carden* and *McCart, Bowlin & McCart,* for defendants in error.

MR. JUSTICE RAMSEY delivered the opinion of the court.

This suit was brought in the District Court of Dallas County by plaintiffs in error against Mrs. Magdalene Knepfly to recover damages resulting from the death of R. F. Radley, caused by a fire in the Knepfly building, situated at the corner of Main and Poydras streets, in the city of Dallas, due, as was averred, to the negligence of Mrs. Knepfly in failing to provide said building, or, at least the third story thereof which was used as a lodging house, with suitable and proper fire escapes as required by the ordinances of the city of Dallas.

At the trial had in said court the judge instructed a verdict peremptorily for the defendant in error. This judgment was, on appeal, affirmed by the Court of Civil Appeals for the Fifth Supreme Judicial District. That court held that the cause of action asserted by appellants was defeated on four different propositions: (1) That under the charter of the city of Dallas it was without authority to enact the ordinance the failure to observe which was claimed to have caused the damages sued for. (2) That, if the power to enact this ordinance be conceded, it was, by its terms, oppressive, unreasonable and therefore void. (3) That, under the facts, the deceased assumed the risks and hazard which caused his death, and (4) as a conclusion of fact from the testimony introduced that the failure on the part of the defendant in error to comply with said ordinance relied on was not the proximate cause of the death of R. F. Radley. It follows, logically, that, if the Court of Civil Appeals is correct on either of these propositions, its judgment should be affirmed.

In view of the conclusion to which we have arrived we have deemed it unnecessary to consider the first three propositions, all involving questions of law decided by the Court of Civil Appeals, though our failure so to do is not to be considered as an affirmance of the correctness of any of them. We have concluded, however, that, in view of the facts appearing in the record, that court was correct in

holding that under the uncontradicted evidence in the case the plaintiffs in error were not entitled to recover.

The uncontradicted evidence showed that what was known as the Knepfly building in the city of Dallas was a three story structure and that the third story was occupied as a lodging house. This building fronted on Main street with a frontage of approximately twenty-five feet and ran back on Poydras street a distance of something like seventy-five feet. The following plat will disclose the general plan of the third story of the building, with its subdivision into rooms and hallways. [Plat on next page.]

The facts immediately preceding the unfortunate death of Radley are disclosed in the testimony of John R. Minor. This witness was introduced by plaintiffs in error and was shown to be the room-mate of Radley. It was also shown in the evidence that he had himself brought a suit against the defendant in error for damages for injuries sustained on the occasion of the fire in question. The following statement, taken from the direct examination, covers, in a general way, the actions of himself and Radley on the immediate occasion of the fire:

"We slept with our heads towards the west. When I got up I went from the side of the bed around the end, and sat down on the floor and the floor was hot. I got up and sat down on the end of the bed, and it brought me in view of the door, and I saw the smoke coming in; three little curls under the hall door, and then I halloed to Mr. Radley to get up, the building was on fire, then I ran to the Poydras end of the building, and broke out the window with a little hammer laying on the window seat. The north window. I broke out the window with the hammer and punched the screen out with my hand. I could see the smoke coming from the second story. The wind blew the smoke in my face. Just as I turned around, Mr. Radley opened the door to the hall; the west door, and the flames shot in there and I threw my hands up to my face to protect myself, and Mr. Radley came staggering back, and I ran and caught him and carried him to the window. I carried him to the north window. As soon as I saw him going through the side, I jumped through the south window. He jumped first, and I jumped right after. I never heard him say anything at all, when he opened the door into the hall. He never said anything after he got up. I broke out the window and looked out, and as I turned around, he opened the door. He seemed to have picked his clothes up and threw them around him. Threw his coat around his shoulders. I had on a suit of underwear. I never had on any shoes. I didn't notice whether he had on shoes or not. South of the door from our room into the hall, there was a window, it had a shade over it. I think it was a wire glass window. It was colored opaque; you could not see through it. There was no notice of any fire except the smoke and heat. When the door was opened, it was all on fire, the door looked like a solid mass of flame. That was out in the hall, coming in through the door as soon as the door was opened. That flame appeared to be coming up directly through the stairway, our door opened onto the side of the stairway and the stairway came up the side of the building. It was four or five feet

THIRD FLOOR

from our door to where the stairway started down; it was four or five feet to the banisters of the stairway. It appeared to me that the whole hall was filled with flame; all the hall I could see was filled with flame. A man could not have gone from our door either to the top of the stairway or the fire escape and get out alive. Mr. Radley appeared to be suffering and badly burned on his face and hands. They were the only exposed parts at that time. He did not go to the window himself; I helped him. I led him to the window. I suppose I caught him by the arm. There was a window sill and he got up on that."

The following additional statement is made in his cross-examination:

"When I was down on the floor I saw the smoke coming in under the door, and I called to Radley that the building was on fire. Immediately after that I broke out the window. I stuck my head out of the window and was almost suffocated with smoke. I stepped back into the room and as I turned around, Mr. Radley opened the door. When the door was opened it blew back with such force as to throw Mr. Radley about half way across the room. I then threw my hands to my face to protect myself from the flames. When I turned around Mr. Radley was badly burned. He was burned on the face and hands, and the exposed portions of the body. Mr. Radley opened the door at the west end of the hall and the hall appeared to be a solid mass of flames. To my own knowledge, I could not say whether he was burned fatally or not."

He also made the following statement on cross-examination:

"I helped him to the window and up into the window. He was burned, and that caused me to help him. He appeared to be so badly burned as to need my help. I ran to him to see if he needed my assistance, and helped him to the window. It was a low window, a little bit lower than that table, I believe. As soon as he jumped out of the north window, I followed him immediately out of the south window. I did not stop to raise the sash, nor screen, nor to break it out either. I saw when he opened the door that it was impossible for him or me either to get out through the hallway. I don't believe it would have been possible to go to the fire escape, in the rear, nor the stairway alive. I did not look for the fire escape or try to go to the fire escape when the door was opened because when the door was opened, it was impossible to get to the hall. I made no effort to go to the rear nor the front of the building."

This testimony was uncontradicted by any other witness except that the injuries resulting to Mr. Radley from the fire were not by the physician believed to have been as serious as would have been implied from the statement of Minor, but there was no contradiction from any source of this statement as to the facts occurring at the moment of the fire. The question, therefore, arises, was there evidence in the record from which the jury might have found that if there had been a complete compliance with the ordinance relied on, and if the defendant in error had installed and maintained a fire escape in the north end of the building, could and would deceased have availed himself of it and have escaped? It is well settled that to authorize the court to take a question from the jury the evidence must be of such

a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. The matter is thus well stated by Associate Justice Williams in the case of Washington v. Missouri, K. & T Ry Co. of Texas, 36 S. W., 778:

"Would the law sanction a verdict had the jury rendered one for plaintiff, upon the evidence submitted to them? It not, then it was the duty of the court to instruct a verdict for the defendant; and not, as seems to be the contention of the appellant, to permit the jury to return a verdict, and if, in the judgment of the court, the verdict was not warranted by the evidence, to set it aside, and grant a new trial. We take it that it is now settled by the weight of authority that, when the evidence is not sufficient in law to authorize a finding for the plaintiff by the jury, the court is not required to go further with the trial, but the jury should be peremptorily instructed to find for the defendant. Galveston, H. & S. A. Ry. Co. v. Faber, 77 Texas, 153, 8 S. W., 64; Pleasants v. Fant, 22 Wall, 120. The doctrine as announced in the cases here cited, and in many others which might be cited, is now generally recognized and enforced by the courts, both of England and America, in the trial of jury cases; and the rule which was formerly observed in some courts, which required a submission of the cause to the jury if there were but a scintilla of evidence to support an issue of fact, is now generally repudiated."

It is the contention of plaintiffs in error that if there had been a fire escape at the north end of the building that Radley would, or, at least, might have gone there and thus have escaped. To have done so he must either have gone through the door leading from the room where he slept, that is room No. 2, into the hall, or he must have broken the doors in the rooms north of him and from thence reached such fire escape at the north end of the building. We have already seen that he could not enter the hall from the room where he slept but that his attempt to do so was met with such a mass of flames as drove him back into his room and almost cost him his life. This door, it will be noted, was almost at the stairway on the inside and very close to the fire escape on the outside of the building which was in good order and sufficient, for the building, in size. In his then condition it is the merest surmise that he would have attempted to have reached the more distant fire escape on the north end of the building, nor does it appear that if such attempt had been made it could or would have been successful. On the contrary, it seems to us that escape in that direction was probably, if not certainly, impossible.

A careful examination of the testimony has convinced us that the fire was discovered so late and had attained such headway that escape, except in the manner attempted, was impossible, and that no additional precaution or safeguard, provided for and required by any of the ordinances read in evidence, would have saved this unfortunate man. Much as we may deplore his pathetic death it seems to us to have been due to the time and place, the hour, the fierceness and suddenness of the fire and not to any of the grounds of negligence alleged. So

believing it follows that the judgment of the Court of Civil Appeals be and the same is hereby in all things affirmed.

*Affirmed.*