VERNON COTTON OIL CO. v. JONES.

(Court of Civil Appeals of Texas. Texarkana. April 20, 1911. On Rehearing, May 18, 1911.)

1. EVIDENCE (§ 54*)—PRESUMPTION ON PRESUMPTION.

It is not permissible, as it would be building presumption on presumption, for the jury to infer, in the absence of any evidence, except that cotton seed when mashed on the floor would leave it slick from the oil therein, that the seeds were on the floor and were mashed, and the oil was there on the floor, leaving it slippery, where an employé in front of a linter machine in a cotton oil mill slipped and got his hand in the saws of the machine.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. § 54.*]

2. EVIDENCE (§ 54*)—PRESUMPTION ON PRESUMPTION.

Even though the jury would be authorized to presume that a person coming from the mealroom of a cotton oil mill to the center room thereof would be likely to carry particles of oily meal on his shoes, they would not be authorized in presuming that some one did so come, and walked by the particular machine at which an employé slipped, and there dropped the meal from his shoes.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. § 54.*]

3. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

Evidence, in an action for injury to an employé in a cotton oil mill from slipping in front of a linter machine and getting his hands in its saws, held insufficient to warrant a finding that the floor there was in an improper condition, or was oily or greasy, or incumbered with anything calculated to make a person fall.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

4. MASTER AND SERVANT (§ 158*)—INJURY TO SERVANT—PROXIMATE CAUSE.

Even though it was negligence not to instruct an inexperienced employé, directed to clean out a linter machine in a cotton oil mill, that the saws were in motion, and as to the risk of injury therefrom, this was not the proximate cause of his injury; his slipping and getting his hands in the saws from underneath, while trying to save himself, having come solely through his accidental fall.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 158.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action by A. B. Jones against the Vernon Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Late on May 22, 1909, appellee and his companion, Herring, applied to the night superintendent of appellant for employment, and were employed, and at 7 o'clock p. m., along with the night shift, were set to work in the mealroom trucking meal. They offered for no special work, and were not engaged for special work, but generally to do work. Appellee was 22 years old. At midnight a recess from work for one hour for lunch was taken. At the end of the recess hour, appellee was directed by the superintendent to go upstairs and report to the foreman of the linter room for work during the balance of the night. Appellee, according to his testimony, informed the superintendent "that I had never worked up there, and didn't know anything about it." The superintendent replied "that there would be a man up there to show me what to do." Appellee, as directed, went to the linter room upstairs, reported to the foreman for work, informed him that the superintendent had sent him for work, and further informed the foreman "that I had never worked up there, and didn't know anything about it, and that he would have to show me and tell me what to do." Previous to this time appellee had worked a day and a half in an oil mill at another town, but only in the mealroom, and had worked about 30 days for the railroad company. This constituted his experience with machinery; but he did not inform the superintendent or the foreman of the details of his experience, and made no other statement than the words above set out.

The appellant operates a cotton oil mill, and for that purpose has machinery operated by steam. In the linter room, which is in the upstairs of the building, is located the linter machines, resembling a cotton gin stand. There were 13 linter machines in the room, arranged in three rows across the room, with sufficient distance between rows to walk and operate the machines. The machines are used to cut lint from the cotton seed, and the seed then drop into a conveyor beneath. The machine stands are attached to the wooden floor, and are operated by pulley and belt to the power in the room below. The pulley that the belt goes on is at one end of the stand. There is a lever located on the stand, by a movement of which the tension belt is loosened, and the saws stop revolving. Each stand has this lever, and its operation affects only the one stand. About the center of each stand is located a set of saws, numbering 106, and when revolving they cut the lint from the cotton. The saws revolve between and underneath 107 metal ribs, arranged together. The ribs are hinged at the back of the framework, and can be raised by elevating from the front. As a protection, there is a breastwork fitting over and above the saws and the metal ribs, completely covering the whole. When this breastwork is down, there is no

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

exposure of the saws. In the operation of the machine, it is very usual and frequeut that seed and lint get lodged between the metal ribs and the saws, and it becomes necessary to dislodge the same. For that purpose a small stick about 12 inches long is provided, with which to pry out and dislodge the seed and lint. In order to reach the saws to clean them out or "unchoke" them, as it is called, it is necessary to take off the breastwork, raise the ribs, and put a trestle under the end to support it. After the ribs are thus elevated for the purpose of cleaning the saws, the saws are under and back 11 inches from the end of the metal ribs, and the bottom of the ribs is 28 inches from the floor, and at the nearest point the saws are two inches below the bottom of the ribs. The saws are five inches under the framework at the end of the stand. In order for a person to get the hand under the ribs back to the saws when the ribs are raised, he would have to stoop down and put his hand back under the 'edge of the ribs 11 inches, before it would come in contact with the saws. On this occasion the ends were open.

The foreman first directed appellee to put a certain belt on a pulley that had come off, and it was done. Then appellee assisted the foreman in cleaning out one of the linters that had become choked. The band had slipped from this linter machine; the saws were not revolving at the time. After cleaning this linter machine, appellee was then directed to sweep and clean up the seed on the floor, which was done. While appellee was sweeping up, machine No. 5 got choked, and appellee was called and directed to assist in cleaning it out. The foreman and appellee removed the breastwork and raised the ribs, and appellee and Gibbs, another workman in the room, began to clean out the choke; appellee began to work from the center to the west end, and Gibbs from the center to the east end. When appellee had finished, except for a few saws, he moved toward the end and started to stoop, when his foot slipped, and he lost his balance, and in the effort to arrest his fall he tried to catch hold of the corner of the metal ribs, and missed the ribs, and his hand went forward and accidentally struck the saws, and was lacerated so as to require amputation just above the elbow. In a trial to a jury, there was a verdict for appellee.

R. W. Hall, Stephens & Miller, and Capps, Cantey, Hanger & Short, for appellant. J. T. Jones, Ed. H. Bennett, W. D. Berry, and Looney, Clark & Leddy, for appellee.

LEVY, J. (after stating the facts as above). In view of the evidence, there are certain assignments for error relating to the charge to the jury that should be sustained, we think, and would require a reversal of the judgment. But as the ninth assignment, if sus-tained, and under the testimony we feel constrained to hold that it must be, would dispose of the appeal on the merits of the case, we discuss only that error.

The assignment predicates error upon the refusal of the court to give a requested peremptory instruction to return a verdict for appellant. As such an instruction involves the right of appellee to recover against the appellant for the injury sustained, it becomes necessary to have understanding of the issues made by the pleadings and proof. Appellee alleged that, while he was performing his work in the usual and customary way, he undertook to make a slight change in his position or place immediately in front of the linter machine at which he was working to a position near the west end thereof, and in so doing he either slipped or lost his balance, which caused him to fall forward and downward toward the linter machine, and in his effort to arrest his falling he "threw out his hand and attempted to catch hold of the metal framework on the end of the covering, but it slipped off or missed the same," and was suddenly thrust into the revolving saws of the machine, and injured. The arrangement of the machine and saws is described in the statement of facts previously set out. Appellee predicated his right to recover upon the alleged grounds that the place and condition of the place were not reasonably safe for work, and that he did not know it; that he was inexperienced in working around machinery of this character, and was ignorant of the means of operating the same and of the danger therefrom, and the foreman of appellant was informed and knew of his inexperience and ignorance, and the danger to him of working around the same while in motion. He specifically charged the negligence to be (1) in the foreman in ordering and directing him to clean out the linter machine while the saws were in motion and the floor in a greasy and slippery condition, without warning him in respect to such conditions, the foreman knowing such conditions to be and exist, and of his inexperience and ignorance of the conditions, and (2) in the foreman in placing him in an extrahazardous position by knowingly permitting the saws to be kept in motion while he was performing the work, and (3) in the failure to furnish a reasonably safe place in which to work, in that the floor was oily and greasy and the room dimly lighted, and the saws were in motion, and this condition, known to the foreman and unknown to appellee, was the proximate cause of the injury.

According to the evidence, appellee was 22 years old, and it does not appear that he was not in full possession of all his faculties, or not of average intelligence. It may be taken as a fact that he had never worked or had experience with a linter machine before that night. It could not be said that he was an utter stranger to and never had previous

knowledge of or experience with any machinery and its operation by steam. He had worked before, as he said, on the railroad for one month, and a day and a half in the cotton mill at Commerce, and had fed the suction pipe at ordinary cotton gins. According to the undisputed evidence, the linter machine at which he was working was so guarded and protected as to make it safe against injury from the saws when cleaning it out, as long as the persons cleaning it out stand in front of the machine, and erect. After the ribs are elevated for the purpose of cleaning the saws, the saws are under and back 11 inches from the end of the metal ribs, and at the nearest point the saws are two inches below the bottom of the metal ribs and inclining upward to the highest about five inches, and the bottom of the ribs is 28 inches from the floor, forming a complete protection from the top and above the saws. According to the evidence, which appellee does not dispute, the ribs thus erected "make it perfectly safe for a man to pull the cotton and trash from between the ribs in the breast, even while the saws are running, for he could not possibly get his hand into the saws without getting down on his knees and putting his hand up under the breast on top of the saws." The machines were all arranged in rows lengthwise, so that the operation of the same could and would be by standing in front of the machine. It was not necessary, nor required, according to the undisputed evidence, to go to the end of the machine to do the work of cleaning. But even at the end of the machine, according to the undisputed evidence, the saws were not exposed beyond the end, but were five inches under and back from the end of the metal framework above them, and so protected that the hand of the operative could not reach same without being inserted from the end under the framework and back five inches. Appellee himself says "the west end of the saws did not extend out beyond the west end of the ribs with the breast raised."

Now the work about the machine that appellee was required to do, and was doing, was to take a stick about 12 inches long, stand erect in front of the machine, and punch out the cotton seed and lint lodged between the metal ribs. He had previously cleaned out one of the machines, as he and the witnesses say, and had been instructed and shown by the foreman, as appellee himself admits, how to do that work. Appellee, though, says the saws in that machine were not at the time running. That is true; but appellee knew that there were saws in the machine, and that the machine was operated with saws, and knew their location in the machines. He helped put on the band that operated the saws, and knew he was putting on the band for the purpose of operating the saws. In speaking of the machine at which he was hurt, as showing and admitting his knowledge of the fact that there were saws in the machine, he said: "I could have seen the saws from the end of the stand, if I had gone around to the end to examine them. But I did not go around and look for it, because I thought they were stopped." The evidence is conclusive that he knew of the fact that the machines were equipped with saws for operation. It is conclusive from the evidence that the machine, as protected, was not imminently dangerous to the hands of the operative cleaning out the same in the proper way, and unless the operative should fall on the floor and get 11 inches under the framework, in which event he would come in contact with the revolving saws. The hands of the operative would not come in contact with the saws so long as he stood erect in doing his work of cleaning out. The cleaning out of the machine was not of itself dangerous work, and it is admitted that appellee was fully instructed how to clean it out.

Appellee testified that on the occasion of his injury he had safely done his work of cleaning out the machine up to a few ribs from the west end, when it became necessary for him to change his position slightly towards the end, and in so doing he slipped and fell, and instinctively threw out his hand to arrest the falling, and accidentally hit the saws on the end, and was injured. He fell in towards the end of the machine. He does not testify that he got around on the end of the machine, but that he got to the end of the same. As to what he meant by changing his position is found only in the explanation that when he got to the end he stooped, because "the ribs were a little bit low, and it became necessary to bend over to do the work." In thus stooping, he slipped and fell. He several times explains his falling, and his is the only evidence of how he fell. He says: "When I started to stoop over, my left foot slipped; as well as I remember, my left foot slipped back south, and I grabbed at the west end of the ribs, and I either missed it, or my hand slipped off of it, and went in on the saws. I don't know whether my hand slipped off of it, or whether I missed it with my hand; I don't know which. I don't know how far my foot slipped. I didn't put my hand in on the saws. I made a grab at the end of the metal breastframe, and my hand either missed it, or slipped off of it—I don't know which—and it went in on the saws. My body did not touch the iron plate at the time my foot slipped.; I was not up against it then. I never stuck my hand in on those saws at all. I got it on them; but I never stuck it under there. I did all that was done there at one time. I did not go there and stick my hand in on those saws. I did it accidentally, is what I would call it." He further says repeatedly: "When I moved up and my foot slipped, I kinder lost my balance, and I grab-

bed at the breast, and my hand went in under and on the saws." Appellee, though, testified that he did not know the saws were in motion, but thought they were stopped. Even if he had known the saws were revolving, appellee, it appears, could not have averted his fall and prevented his hand from being thrust under the metal and onto the saws. The injury was not due in the least to his unskillfulness or want of knowledge of the use and operation of the saws. In his fall he instinctively threw out his hand to arrest the fall, and missed what he grabbed at, and his hand suddenly and accidentally was thrust onto the saws. He himself says, "I did all that was done there at one time."

Appellee in his petition says that he slipped or lost his balance "on account of the greasy condition of the floor." The evidence wholly fails to support this allegation. Nor is there any evidence that would authorize a jury to find or infer that the floor space at which appellee was working was oily, greasy, and slippery, or incumbered in any way calculated to make the appellee fall. Appellee does not state what caused his foot to slip. He simply explains it by saying that his foot slipped, and he lost his balance. As to the condition of the floor, appellee says, "I did not know what the condition of the floor was at the time I fell. I did not notice before I fell that the floor was greasy and slippery." And, "I saw where I was standing at the time my foot slipped. There was no seed under my feet at that time that I noticed." The witness Gibbs, who was a helper and working with appellee at the time of his injury, testified: "There were never very many seed allowed to accumulate on the floor near where Jones and I were working at that linter, except just what had dropped out of the linter when the breast was raised, and while it was being cleaned. They always swept around and kept the floor of that linter room clean." The foreman testified that just before directing appellee to do the work he "put him [appellee] to sweeping the floor and cleaning up the seed that were scattered about." Appellee admits that he did the sweeping. The witness Gibbs testified that in raising the breastwork some seed dropped out on the floor. But appellee says, "Those seed were removed before we went to cleaning the ribs of that stand. Mr. Parsons removed those seed." Again appellee says, "When the breast was raised, there were some seed that dropped out; but I saw them swept up afterwards." And appellee further says, "There was no seed falling through this last linter that we were cleaning, and I thought at that time that the saws were stopped." So by this testimony, through appellee himself, it could not be said that there were seed negligently left on the floor at the time.

[1] Appellee proved by the witness Moore that seed, when they became mashed, would leave the floor slick from the oil in the seed. But there is an utter absence of any proof that any seed were mashed on the floor at that time and place, or at any time. Appellee says, "I did not notice where any seed had been mashed on that floor." Seed may have oil, and when mashed the oil may go on the floor, but that would not authorize the jury to further infer that seed were on the floor and were mashed, and the oil was there on the floor, and the floor was left slick and slippery. It would be building presumption on presumption, which is not authorized.

[2] For the purpose of showing inferentially that the floor was greasy and slippery, appellee proved by the witness Moore that the floor of the mealroom is greasy, and that people travel through the meal up to the linter room and drop the meal from their feet. The witness testified: "The floor of the linter room does get some meal on it sometimes. Some people travel through the mealroom up to the linter room sometimes. And when they go up to the linter with meal on their feet, of course, it is a fact that they would necessarily leave some of the particles of meal on the floor of the linter room. But I do not think that the floor of that linter room is necessarily slick and greasy, and I do not think it is necessarily slick and greasy now." Appellee himself testified: "The mealroom had considerable meal on it at the time that I was injured. It had considerable meal on it; and I guess that it was greasy. I know as a matter of fact that it was greasy. I should think that a man passing over that floor and then going up on the upper floor would carry the grease on his shoes upon the upper floor." The mealroom was shown to be on the lower floor, and the linter room in the upstairs. And there is no evidence whatever showing that any person, but the appellee himself, came from the mealroom to the linter that night or any time. The record only shows appellee, Gibbs, and the foreman, and a negro to be, or to have been, in the linter room. And it is not shown that these people, except appellee himself, were ever in the mealroom. So if a person coming from the mealroom is likely to carry particles of oily meal on his shoes to the linter room, and the jury would be authorized to presume this, they would not be warranted in making the further presumption that some one did come up there, and indulge the further presumption that that person walked by the particular linter stand and dropped the meal from his shoes there. While it is true appellee himself had worked the forenight in the seedroom, and had come from there into the linter room, he does not undertake to say that he had any particles of meal on his shoes. He says that after leaving the mealroom at the recess he walked around some out of doors. It may be that the reason appellee's foot slipped is found in the fact that he was wearing new shoes, and the soles had

become slick in the mealroom. He says, "I was wearing a new pair of shoes that night. I had been wearing them some three or four days. They did not have very stiff soles."

[3] It must be said from the record that there is an entire absence of any evidence warranting the jury in concluding or inferring that the floor in front of or about the linter machine was in any improper condition, or was oily or greasy, or incumbered by anything calculated to make a person fall. Manifestly the testimony in the record conclusively establishes the facts (1) that there was nothing uncommon about the machine, and that the danger only arose from the revolving saws, and the saws were so fully safeguarded from above as that an operative, while doing the work of cleaning out by standing erect in front of the machine, which was the way directed, "could not possibly get his hands into the saws without getting down on his knees and putting his hand up under the breast on top of the saws;" (2) that appellee's injury did not proceed or arise from any ignorance of the working of the machine itself, or from the method, as such, directed to be used in cleaning the same, or from the work as such of cleaning out the machine, or the instrumentalities furnished to do the cleaning, or any negligent condition of the floor or place he was working at; and (3) that the appellee did not voluntarily and ignorantly thrust his hand into the revolving saws while performing the work, or from any unskillfulness on his part in the use or operation of the machine, but that his hand went down and under the metal frame protecting the saws from above at the end of the machine in consequence of sheer accident on his part, due to his slipping or falling on the floor.

[4] So, admitting that the facts are sufficient to warrant the finding that appellee was inexperienced in the use and operation of the machine, and did not know the saws were revolving at the time, the case, under the evidence, is made to turn upon the necessity of instructions from the foreman as to the liability or risk which appellee ran of injury from the revolving saws. And it may be conceded that it was the duty of the foreman to have adequately instructed as to the use and operation of the machine, and to have informed appellee that the saws were in motion, and that the failure to give such instructions may properly be found to be negligence. It is impossible to perceive how the absence of instructions had anything to do with this injury. His injury did not come from ignorance of the use and means of operation, or from unskillfulness in the use on his part, or from ignorance of the danger of operation and use. His falling was from no condition traceable to appellant, but was a mere accident on appellee's part, and no amount of instruction or caution from the

foreman of appellant would have prevented the accident, or saved appellee from his unfortunate injury. There is no rule of law that an inexperienced person may not be employed about dangerous machinery, and the simple fact that a machine is dangerous does not make the employer liable for an injury received upon such machine. All the law requires is that the employé, under such circumstances, should be properly instructed as to the use and means of operation and the danger to which he is exposed; and, if he is injured because he has not received such instructions, then, as a general rule, the employer may be held responsible. But, of course, such failure to instruct must have been the proximate cause of the injury. 4 Thompson on Neg. 4082; 2 Labatt on Master & Servant, 803. And under the testimony here the failure of appellant's foreman to instruct appellee as to the danger of revolving saws was not the proximate cause of his injury. Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717; Hickey v. Taafe, 105 N. Y. 26, 12 N. E. 286; Palmer v. Harrison, 57 Mich. 182, 23 N. W. 624; Lumber Co. v. Mooney, 4 Ariz. 366, 42 Pac. 952; Radley v. Knepfly, 135 S. W. 111.

The judgment is reversed and here rendered in favor of appellant, with all costs.

### On Rehearing.

The appellee insists that even if the failure to warn him that the saws were revolving was not the proximate cause of the injury, he was nevertheless entitled to recover if his injury was the proximate result of the alleged negligence in directing him, without first stopping the saws from running, to unchoke the saws. We fully disposed of this question in the original opinion, and we feel constrained to adhere to the ruling. As shown, the evidence is conclusive that the injury did not result from unskillfulness in the use of the machine or saws, or from want of knowledge on the part of appellee that the saws were revolving. The appellee's arm came in contact with the saws, as admitted by him in his testimony, solely through his accidental fall, and his falling was from no condition or fault traceable to appellant in the record. The case of Ry. Co. v. Bayne, 28 Tex. Civ. App. 392, 67 S. W. 443, is clearly distinguishable on the facts from the present appeal.

The motion was ordered overruled.