## FEDERAL UNDERWRITERS EXCHANGE v. BULLARD et al.

No. 13894.

Court of Civil Appeals of Texas. Fort Worth.

April 7, 1939.

Rehearing Denied May 19, 1939.

Benbow, Saunders & Holliday, Claude Williams, and Henry D. Akin, all of Dallas, for plaintiff in error.

Johnson & Oliphant, of Dallas, for defendants in error.

DUNKLIN, Chief Justice.

The Federal Underwriters Exchange has prosecuted this appeal by writ of error from a judgment rendered in favor of G. M. Bullard and others, for compensation, by reason of the death of W. W. Bullard, resulting from an injury sustained by him as an employee of the Rajo Oil Corporation, who carried insurance for the benefit of its employees with the Federal Underwriters Exchange, under the terms of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq.

The claim for compensation was first filed with the Industrial Accident Board, and reached the District Court of Gregg County on appeal by the Federal Underwriters Exchange, in due and proper form.

In that court issues were duly tendered by the insurer, as plaintiff, and by the beneficiaries, as cross plaintiffs, in proper form, and the judgment from which this appeal is prosecuted was rendered upon the issues so tendered.

For convenience, we will designate in this opinion the beneficiaries as plaintiffs, since they were the ones seeking compensation, and the insurer as defendant, who was resisting the recovery.

The record shows that W. W. Bullard, while working as an employee of the Rajo Oil Corporation, and performing the duties of his employment, was injured when struck by an elevator, which fell on him, and from the injuries so received he died about two days later. He was a single man, and his parents, G. M. Bullard and Mrs. Gertrude M. Bullard, survived him. The Gregg Memorial Hospital and several other persons filed cross actions in the suit in the nature of interventions, for nurse hire, medical and hospital services, rendered the deceased after he received his fatal injury. The judgment rendered was in favor of the parents, and those intervening parties, in certain proportions.

The trial was before a jury on special issues submitted. Preliminary to the submission of the issues, the court gave correct

definitions of the terms "injury," "employee" and "injury sustained in the course of his employment," together with these definitions:

"By a 'preponderance of the evidence,' as used in this charge, is meant the greater weight and degree of the credible testimony before you."

"The phrase 'substantially the whole of the year' whenever used in this charge, shall be construed to mean 300 days or close to or near to 300 days."

Following are the special issues submitted, with the findings of the jury thereon:

"Special Issue No. 1: Do you find from a preponderance of the evidence that W. W. Bullard sustained personal injuries on or about the 29th day of April, 1937, in Gregg County, Texas? Answer 'yes' or 'no'. Answer: Yes.

"If you have answered special issue No. 1 'yes', then answer the following issue, otherwise do not answer same.

"Special Issue No. 2: Do you find from a preponderance of the evidence that such injuries, if any, sustained by W. W. Bullard were sustained by him when he was an employee of the Rajo Oil Corporation? Answer 'yes' or 'no'. Answer: Yes.

"If you have answered Special Issues Nos. 1 and 2 'yes', then answer the following issue, otherwise do not answer same.

"Special Issue No. 3: Do you find from a preponderance of the evidence that such injuries, if any, sustained by W. W. Bullard, on or about April 29th, 1937, were received by him in the course of his employment with the Rajo Oil Corporation? Answer 'yes' or 'no'. Answer: Yes.

"Special Issue No. 4: Do you find from a preponderance of the evidence that on April 29th, 1937, the cross defendant, Federal Underwriters Exchange, was the insurer of the Rajo Oil Corp. and its employees under the provisions of the Workmen's Compensation Law? Answer 'yes' or 'no'. Answer: Yes.

"If you have answered Special Issue No. 1 'yes', then answer the following issue, otherwise do not answer same.

"Special Issue No. 5: Do you find from a preponderance of the evidence that such injuries, if any, sustained by W. W. Bullard, resulted in his death, on or about May 2nd, 1937? Answer 'yes' or 'no'. Answer: Yes.

"Special Issue No. 6: Do you find from a preponderance of the evidence that the payment of compensation to the cross plaintiffs, G. M. Bullard and wife, in weekly installments instead of a lump sum (if compensation is due to be paid to the cross plaintiffs) will result in manifest hardship and injustice to the cross plaintiffs? Answer 'yes' or 'no'. Answer: Yes.

"Special Issue No. 7: Do you find from a preponderance of the evidence that W. W. Bullard performed the same or similar work in the same or neighboring place as that which he was performing on the date of his injuries, if any, on or about the 29th day of April, 1937, during substantially the whole of the year next preceding the said April 29th, 1937, whether for the same employer or not? Answer 'yes' or 'no'. Answer: Yes.

"If you have answered Special Issue No. 7 'yes' and in that event only, then answer the following issue, otherwise do not answer the same.

"Special Issue No. 8: What do you find from a preponderance of the evidence was the average daily wage of W. W. Bullard during substantially the whole of the year immediately preceding the date of his injuries, if any? Answer in Dollars and Cents, if any. Answer: Six Dollars per day.

"If you have answered Special Issue No. 7 'no' and in that event only, then answer the following issue, otherwise do not answer the same.

"Special Issue No. 9: Do you find from a preponderance of the evidence that during substantially the whole of the year just preceding April 29th, 1937, that there was any employee of W. W. Bullard's class and occupation who performed the same or similar work in the same or neighboring place whether for the same employer or not, to that which said W. W. Bullard was performing, if any, on April 29th, 1937? Answer 'yes' or 'no'. Answer: (No answer).

"If you have answered the above special issue 'yes' and in that event only, then answer the following issue, otherwise do not answer the same.

"Special Issue No. 10: What do you find from a preponderance of the evidence was the average daily wage of such an employee as W. W. Bullard's class in such employment during the days while so employed during the year immediately preceding April 29th, 1937? Answer in Dollars and Cents, if any. Answer: (No answer)."

The judgment rendered by the trial court sets out the verdict, followed by these conclusions:

"And the court now having under consideration on this the 18th day of February, 1938, Cross Plaintiffs' Motion for Judgment on the said verdict and the matters established by the undisputed evidence, and the court being of the opinion that the award of the Industrial Accident Board should be set aside and that Cross Plaintiffs, G. M. Bullard and his wife, Gertrude M. Bullard, are entitled to recover $20.00 per week for the definite period of 40 weeks, representing compensation accrued from the date of the death of W. W. Bullard to the present date, amounting to the sum of $800.00, with interest on the said installments of 6 per cent per annum as they accrued, said interest aggregating $18.40 and the sum of the accrued installments, with interest, amounting to $818.40, and, in addition thereto, the present lump sum value of 320 installments of unaccrued compensation at the rate of $20.00 per week, amounting, after applying the discount provided by law, to the sum of $5,375.22, the total of the accrued compensation installments, with interest thereon, and the present value of the unaccrued installments being the sum of $6,193.62, and the court being of the further opinion that Cross Plaintiffs' contract with their attorneys for a fee in the amount of ⅓ of their recovery herein is lawful and should be approved, and that the said compensation of $6,193.62 should be apportioned two-thirds to the Cross Plaintiffs in their own rights, and one-third for the use and benefit of their attorneys."

With findings in favor of cross plaintiffs for hospital bills, doctor bills and nurses, in stated amounts. Then follow these provisions:

"It is further ordered, adjudged and decreed that the Cross Plaintiffs, G. M. Bullard and his wife, Gertrude M. Bullard, do have and recover of and from the defendant, Federal Underwriters Exchange, the sum of $6,193.62, with interest, at the rate of 6 per cent per annum from the date hereof, apportioned $2,064.54, with interest, to G. M. Bullard, to himself and in his own right, and $2,064.54, with interest, to Gertrude M. Bullard, to herself and in her own right, and $2,064.54, with interest, for the use and benefit of W. E. Johnson and W. L. Oliphant, composing the firm of Johnson & Oliphant, their attorneys of record, for which they may have their separate execution."

Also judgment in favor of other cross plaintiffs in accordance with findings in their favor.

■ Before presentation of evidence in their behalf, counsel for G. M. Bullard and his wife read to the jury certain allegations in their pleadings that the insurer had appealed to the District Court from the action of the Industrial Accident Board, on their claim for compensation.

After these pleadings were read, counsel for the insurer moved that a mistrial be ordered and the case continued, on the ground that such statement operated to the prejudice of the insurer, in that the jury were thereby informed that the decision of the Accident Board was adverse to the insurer. Error is assigned to the overruling of that motion.

Article 2180, Vernon's Texas Revised Civil Statutes, reads, in part:

"The trial of cases before a jury shall proceed in the following order, unless the court should, for good cause, to be stated in the record, otherwise direct:

"1. Plaintiff's petition shall be read to the jury."

By permitting the reading of the pleadings to the jury without objection, the insurer waived the right, if any they had in the first instance, to object to such action. Templeton v. City of Wellington, Tex.Civ. App., 207 S.W. 186.

Therefore, decisions cited by appellant, in support of the assignment, are not controlling; such as, Texas Employers' Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112; Fidelity Union Casualty Co. v. Klatt, Tex.Civ.App., 47 S.W.2d 417; Texas Employers' Ins. Ass'n v. Phillips, Tex.Civ. App., 62 S.W.2d 313. Besides, some of the decisions cited are distinguishable from the present suit, in that the award of the Board was shown in the pleadings read to the jury, and in others assignments sustained were to the introduction in evidence of the award by the Accident Board, or to argument of counsel referring thereto, etc.

■ The testimony showed conclusively that while W. W. Bullard was engaged in the performance of the duties of his employment by the Rajo Oil Corporation, he was struck and killed by a falling eleva-

tor, operated by his employer, as alleged in appellee's pleadings. Therefore, there is no merit in the appellant's assignment based on objection to issue No. 1, because it did not confine "personal injuries" to those alleged in appellees' pleadings. Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W.2d 210; Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W. 2d 658; Southern Underwriters v. Wheeler, Tex.Com.App., 123 S.W.2d 340. Authorities cited by appellant in support of this assignment are therefore not in point, as is apparent from a reading of those decisions, including Traders' & General Ins. Co. v. Low, Tex.Civ.App., 74 S.W.2d 122; Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552, and others therein noted.

Error is assigned to the definition given of "preponderance of the evidence", and the instruction to answer the issues from the evidence introduced, in connection with this form, in which all special issues were submitted, towit: "Do you find from a preponderance of the evidence", etc., on the ground that the same were confusing and tended to operate to appellant's prejudice.

In Psimenos v. Huntley, Tex.Civ.App., 47 S.W.2d 622, 623, the trial court gave a general instruction preliminary to submission of the issues, to answer all questions propounded to them from a preponderance of the evidence. The first question submitted read: "Was the defendant, at the time he struck plaintiff's husband, driving his car at a speed in excess of twenty-five miles per hour? Answer 'yes' or 'no.' " Other issues were submitted in like form. It was held that each special issue submitted should have included an instruction that the burden was on plaintiff to support an affirmative finding thereon by a preponderance of the evidence, and that the general preliminary instruction on the burden of proof was insufficient.

The same ruling was made in Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W.2d 658, in opinion of Justice Critz, for the Supreme Court, in which the Psimenos v. Huntley case was cited with approval.

In Federal Underwriters Exchange v. Rigsby, Tex.Civ.App., 114 S.W.2d 354, 355, this was said:

"The court gave the jury the following general charge on the burden of proof:

'This case will be submitted to you upon special issues, which you will answer as you find the facts to be, from a preponderance of the evidence; that is, the greater weight of the credible evidence.'

"The special issues were submitted to the jury as follows: 'Do you find from a preponderance of the evidence,' etc., and directed the jury to answer each question 'yes' or 'no', 'as you find the facts to be.' The charge on the issue of burden of proof was error."

In support of that conclusion, the court cited the opinion in Fidelity & Casualty Co. v. Van Arsdale, Tex.Civ App., 108 S. W.2d 550, writ of error dismissed, in which the special issues submitted in substantially the same form were condemned, because it placed upon the defendant the burden of proving the negative of each special issue submitted, an affirmative answer to which was necessary to a judgment in plaintiff's favor.

▮ As shown by the opinions in those cases, the vice seems to be in the instruction to answer each issue "as you find the facts to be." Other decisions cited in those cases and in briefs of appellant here are to the general effect that the burden should be specifically placed on the plaintiff to sustain by evidence the affirmative of each issue on which he relies for a recovery, and that the court's instruction on that point should not be in confusing and indefinite terms.

▮ The instructions criticised in the case at bar do not include the vice to answer the issues "as you find the facts to be". Each issue was submitted in the approved form. It correctly places upon plaintiff the burden of proof. The added instruction, "answer yes or no", was surplusage, since that is the only method it could be answered.

Accordingly, the assignments of error now under discussion are overruled.

▮ To prove that appellant was a subscriber under the Workmen's Compensation Act, appellees introduced in evidence a duly certified copy, from the records of the Industrial Accident Board, of a document filed with the Board by the Rajo Oil Corporation of "notice of renewal of compensation insurance," in every respect the same as required of an original, reciting the expiration of its original policy, No. 34716, and that it would be effective from November 1, 1936,

to November 1, 1937. Attached to the copy was the following certificate:

"I, Berniece Grieder, Secretary of the Industrial Accident Board of the State of Texas, do hereby certify that the attached and foregoing is a full, true and correct copy of Notice that Employer has Become Subscriber, under Policy No. 34716, issued to Rajo Oil Corporation, Federal Underwriters Exchange, effective November 1st, 1936, to November 1st, 1937, which now appears of record in this Department in the Subscriber's File captioned Rajo Oil Corporation.

"I further certify that said instrument was received and filed in this office on October 15, 1936.

"In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of the Industrial Accident Board at its offices in the Land Office Building in the City of Austin, Texas, on this 21st day of January, 1938, A. D.

"(Signed) Berniece Grieder, Secretary."

We believe it manifest that the certified copy was admissible and that it was conclusive proof that appellant was an insurance carrier under the Workmen's Compensation Act. Texas Employers' Ins. Ass'n v. Trotter, Tex.Civ.App., 54 S.W.2d 1023.

■ Accordingly, the assignment of error to the submission of Special Issue No. 4, on the ground of lack of evidence to warrant it, and the further assignment to the refusal of the court to instruct a verdict for appellant on the whole case for the same reason, are overruled.

The only testimony offered by appellees to support findings in their favor in answer to issues Nos. 7 and 8 was that of H. E. Bullard, a brother of the deceased. The witness testified he and W. W. Bullard had done roustabout or rough-necking work from April 29, 1936, to April 29, 1937. And on his direct examination, he testified as follows:

"Q. Did you know your brother during all that period of time? A. Yes, sir.

"Q. Do you know whether he had worked 300 days or not? A. I judge he had worked 300 days.

"Q. You judge he had worked 300 days? A. Yes, sir.

"Q. I am asking you if you know whether he had or not. A. Well, I would say he had, yes, sir.

"Q. Do you know what he got per day? A. Well, he got from five dollars to seven dollars.

"Q. What was his rate of pay? A. From five dollars to seven dollars per day."

The witness testified further on cross examination by counsel for the insurer, as follows:

"Q. Do you know how long a time, how many days, your brother had worked for the Rajo Oil Company, I believe you said he was working for them at the time of his injuries; how long had he worked there? A. Six days until he got hurt.

"Q. Who did he work for immediately before going to work for the Rajo? A. He worked for L. O. Gandy.

"Q. When did he go to work for Mr. Gandy, Mr. Bullard? A. He had been working for them for the last year.

"Q. All the time? A. Well, most all the time. He worked for them and Johnston & Burnham.

"Q. Let's take them separately so we can get this information, please, sir. Do you know the date he went to work for Mr. Gandy? A. I couldn't tell you the date, no, sir.

"Q. Where was Mr. Gandy, where was he operating when he went to work for him? A. He operated in the whole field.

"Q. Does he have an office here? A. No, sir, not here.

"Q. Where is his office? A. Tyler, I believe.

"Q. L. O. Gandy, at Tyler? A. Yes, sir.

"Q. Had he been off from work from the time he quit working for Mr. Gandy before he went to work for the Rajo? A. Well, he probably wasn't working at the time he went to work for the Rajo.

"Q. How long had he been been off from work when he went to work for the Rajo? A. He had not been off, he was—I will say working for L. O. Gandy, rough-necking for L. O. Gandy and other drilling contractors. Most of the work was for Gandy.

"Q. I am just trying to get the record straight. How long did he work for Gandy, do you know? A. No, sir.

"Q. How do you know what Mr. Gandy paid him? A. I have worked for him myself.

"Q. You know what he paid you? Did your brother tell you what he was paying him? A. He told me.

"Q. But you don't know that. Except what your brother told you, and Mr. Gandy? A. Yes, sir.

"Q. Do you know how many days he worked for Mr. Gandy the year immediately preceding the injury, the 29th of April, 1936, to the 29th of April, 1937, you don't know the number of days he worked for Mr. Gandy? Is that correct? A. No, sir.

"Q. Who else did he work for in that year's period of time besides Mr. Gandy? A. That is a hard question for me to answer, because he was working practically all the time around there for somebody.

"Q. Name some of them. A. Who he worked for I don't know. I couldn't tell you exactly who he was working for. This job out here was the first job me and him had roughnecked on.

"Q. Is this the first job—of course you were not with him when he was roughnecking on the other jobs? A. No, sir, I would see him every night but not work with him.

"Q. You naturally don't know the number of days he was working for these other gentlemen? A. No, sir, not the exact number of days.

"Q. You know any other person he worked for during that year besides Mr. Gandy? A. I know some of them, I couldn't call the names, I might know the company if I heard them called.

"Q. How often did you see your brother during the year previous? A. Every day.

"Q. Was that part of the time, I presume he was working like most all of the other boys who worked the field, who was working part of the time, and get through that job and get another job and go with some other contractor and work part of the time? A. Part of the time, yes, sir.

"Q. How much of the time would you say was it during the year, he wasn't actually working, how many days? A. I would judge he would not lose over two months out of the year from working.

"Q. I see. Of course you don't actually know about that, that is your best judgment? A. Yes, sir.

"Q. What did you say his weekly wage was, from five dollars to seven dollars?

A. From five dollars to seven dollars per day.

"Mr. Saunders (counsel for insurer): I think that's all.

"Mr. Johnston (counsel for appellees): That's all. (Witness excused).

"Mr. Saunders: We want to move to exclude the testimony of the witness as given on the ground that in relation to the number of days and the wage rate of the deceased shows upon its face it is based in part, if not in whole, upon hearsay testimony.

"The Court: He testified it was probably two months he didn't work. I will overrule the objection.

"Mr. Williams: We except. The motion goes to the testimony relative to his wage rate as well as the days he worked.

"The Court: All right."

The witness did not testify to the number of days in the week deceased worked, or whether he worked on Sundays or holidays, in cases of emergency. Deducting two months deceased lost from the whole year leaves only ten months of the customary 25 working days each, aggregating only 250 days during which he worked; to say nothing of the hearsay and indefinite character of the testimony of the witness as to the earnings of the deceased while he was actually working. Accepting his testimony as true and giving it full probative force, it was insufficient to support the jury's findings on issues 7 and 8, and the assignments of error based on that contention are therefore sustained.

In support of this conclusion, we quote the following from the opinion of Justice Critz, for the Commission of Appeals, in Petroleum Casualty Co. v. Williams, 15 S.W.2d 553, 555, which was a Workmen's Compensation case, and involving the issue of compensation under section 1, subdivisions 1, 2 and 3, of Article 8309, Revised Civil Statutes:

"Both subdivisions 1 and 2 provide that the average annual wages shall consist of 300 times the average daily wages. Also, subdivision 5 of section 1 of the same article provides: 'The average weekly wages of an employé shall be one fifty-second part of the average annual wages.' It is thus made clear to us that, as defined by the law itself, when an employé has worked as much as 300 days during the 12 months immediately preceding the injury he has worked a year of labor with-

in the meaning of the statute. In our opinion it would be placing an erroneous and unjust construction upon the statute to hold that under its provisions an employé must work 365 days in order to work a year, and at the same time compute his average annual wages by multiplying his actual average daily wages by only 300. A statute should not be given a construction that leads to an absurdity or thwarts the plain purposes of the Legislature. Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070. This construction is further fortified by the fact that it is known of all men, and judicially known by this court, that as a general rule labor does not work on the Sabbath except where engaged in those occupations in which necessity compels them to do so. After we deduct 52 Sundays from the 365 days, barring leap year, we have left but 313 working days. Under article 4591, R.C.S.1925, there are 11 legal holidays that are generally observed by our citizens in all walks of life. Thus it will be seen that the Legislature has seen fit to define 300 days as a year of labor for the average laborer.

"We are further of the opinion that substantially a year, within the meaning of subdivisions 1 and 2, is exactly 300 days or close to, or near to 300 days. It may be slightly more than 300 days or slightly less than 300 days. That is to say substantially a year means a year or about a year, or so near a year as to be a year for all practical purposes. A reading of the three subdivisions together, and a viewing of same in the light on the entire act, will show any other construction will lead to confusion. Further, it would be doing violence to the express purpose of the act to give the word substantial an absolute literal meaning or definition, as to do so would lead to a holding that the Legislature provided a measure of compensation under subdivision 1 for about or nearly a year, or close to a year, but failed to do so for exactly a year, and further, such a construction would lead to the conclusion that the act nowhere provides a measure of compensation for exactly a year, except under the general provisions of subdivision 3. To our minds it is plain that the Legislature intended to measure compensation for exactly a year, and substantially a year, on the same basis."

What was there said was quoted with approval in the opinion of the Commission of Appeals, in Casualty Reciprocal Exchange v. Stephens, 45 S.W.2d 143. In 41 Tex.Jur., sect. 237, p. 1042, in discussing the question of sufficiency of evidence requiring submission of an issue to the jury, this is said:

"To be sufficient the evidence should be more than purely speculative. When its probative force is so weak that it only raises a mere surmise or suspicion, the evidence is not, in legal contemplation, 'any evidence.' And where the only testimony on an issue is so indefinite and uncertain as to preclude a finding, the issue should not be submitted."

Many decisions cited by the author support that text, including City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718. See, also, decisions cited in opinion in that case, including Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Galveston H. & S. A. R. Co. v. Faber, 77 Tex. 153, 8 S.W. 64; Radley v. Knepfly, 104 Tex. 130, 135 S.W. 111.

Appellees cite testimony of E. P. Sawyer, a disinterested witness, which was uncontradicted by any other witness, that his brother did roughneck work in the oil fields in the vicinity where W. W. Bullard worked for 300 days, from April 29, 1936, to April 29, 1937, less probably 10 days, for a wage of $6 per day. His information as to this was from seeing his brother's vouchers and checks.

Referring to that testimony, appellees argue that even if appellees failed in their proof to establish a right to compensation under Section 1, subdivision 1 of Article 8309, Revised Statutes, they did show right to the same compensation awarded under section 1, subdivision 2 of that article, by uncontroverted testimony, and therefore the judgment should be affirmed on that theory. Citing such authorities as Johnson v. Breckenridge-Stephens Title Co., Tex.Com.App., 257 S.W. 223; Southland Greyhound Lines, Inc., v. Richardson, 126 Tex. 118, 86 S.W.2d 731; Bewley Mills v. First Nat. Bank, Tex.Civ. App., 110 S.W.2d 201; Southern Underwriters v. Jordan, Tex.Civ.App., 122 S.W. 2d 260.

We believe the argument is without merit, because the judgment, by its recitals, shows that it was rendered on the verdict of the jury and the undisputed evidence, and without any finding either by the jury or by the court that the deceased had not worked in the employment in which he was

working at the time of his injury, during the whole of the preceding year, which was a condition for a right to compensation under section 1, subdivision 2 of Article 8309, nor was there any express or implied findings by the court of facts necessary to a recovery under said subdivision 2.

 Even if the court, on the testimony of witness Sawyer, had found the facts necessary to support the amount of compensation shown in the judgment, such a finding could not have been given effect without first setting aside the findings of the jury on issues 7 and 8, because under the very terms of subdivision 2 of Article 8309, compensation thereunder cannot be allowed unless it appear that it cannot be allowed under subdivision 1 of the Article. Therefore, any implied finding by the court of right to compensation, under subdivision 2, would necessarily conflict with the findings of the jury of facts warranting compensation under subdivision 1. That conflict would of itself be an insurmountable obstacle to the validity of any award of compensation, under the first two subdivisions of Article 8309. No question is presented here of right thereto under any other subdivision of the same article.

 The proof showed without controversy that W. W. Bullard was an employee of the Rajo Oil Corporation at the time he was injured. It was, therefore, unnecessary to submit that issue to the jury; and assignments of error to the action of the trial court in assuming that he was so employed are overruled. See authorities noted above.

 Appellee G. M. Bullard testified without contradiction that he and his wife, appellee Mrs. Gertrude M. Bullard, were separated and not now living together. His further testimony tended to show a sufficient basis for a lump sum settlement of his claim for compensation. Indemnity Insurance Co. of North America v. Wright, Tex.Civ.App., 69 S.W.2d 438, and cases there cited.

But there was no testimony from any source to show the same right in Mrs. Gertrude M. Bullard.

Section 8, Article 8306, reads: "If death should result from the injury the association hereinafter created shall pay the legal beneficiaries of the deceased employé a weekly payment equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 per week, for a period of three hundred and sixty weeks from the date of the injury."

Subdivision 15, Article 8306, Vernon's Tex.Civ.St., reads: "In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. This section shall be construed as excluding any other character of lump sum settlement except as herein specified. In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

 As shown above, compensation was awarded to G. M. Bullard and his wife separately and in equal amounts. That separate award to his wife necessarily implied that it should be paid to her and not to her husband, and for her separate use and benefit. Neither in the trial court nor here has G. M. Bullard claimed that he was entitled to the award in favor of his wife, on the theory that the same was community funds to which he, as the head of the family, was entitled to possess and control, and which right, if any he had under applicable statutes, he could undoubtedly waive, and did waive, insofar as is pertinent to this appeal, irrespective of the relative rights of the husband and wife in any controversy in the future involving that issue, which we do not undertake to determine.

Under such circumstances, assignment of error to the lump sum settlement of compensation awarded to the wife is sustained. Bailey v. Texas Indemnity Ins. Co., Tex.Com.App., 14 S.W.2d 798; Maryland Casualty Co. v. Graham, Tex.Civ.App., 38 S.W.2d 909; Standard Accident Ins. Co. v. Simpson, Tex.Civ.App., 21 S.W.2d 8, and cases cited.

Since the judgment must be reversed and the cause remanded, for the errors above noted, we shall not undertake a determination of other assignments of error to the allowance of claims for hospital and medical services and nurse hire, etc., all of which are challenged on the ground of lack of sufficient proof to support them. We cannot say that the evidence on these issues will be the same on another trial.

For the errors noted, the judgment of the trial court is reversed and the cause is remanded for a new trial as to all parties. All costs of appeal are taxed against the appellees, G. M. Bullard and wife, Gertrude M. Bullard.

On Motions for Rehearing.

In our original opinion this was said: "Appellee, G. M. Bullard, testified without contradiction that he and his wife, appellee, Mrs. Gertrude M. Bullard, were separated and not now living together."

As pointed out by appellees in their motion for rehearing, that statement was without sufficient support in the testimony of plaintiff G. M. Bullard, and it is accordingly withdrawn. However, as pointed out, the award of compensation was made to the husband and wife in separate amounts, to be paid to each separately from the other, with no objection thereto by the husband. And since the necessity of a lump sum settlement with the husband was for the award to him only, and did not involve the award to his wife, and there being no testimony of facts to show her right to a lump sum settlement of the award to her, also, we adhere to the conclusion reached on original hearing, that the court erred in submission of the issue of her right to a lump sum settlement of the award to her. Her right to that relief is derived from the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., and she had the burden of establishing it in accordance with its provisions.

The motions for rehearing by both plaintiff in error and defendants in error are overruled.