## City of Houston v. Kate Scanlan et al.

No. 5484. Decided April 1, 1931.
(37 S. W., 2d Series, 718.)

*John H. Freeman,* City Atty., *Fullbright, Crooker & Freeman* and *Nat H. Davis,* for appellant.

*Walter F. Brown,* for appellees.

Mr. Commissioner RYAN delivered the opinion of the court.

This suit was brought by Kate Scanlan and her three sisters against the San Jacinto Construction Company and the city of Houston for damages and to enjoin the defendants from widening and paving the street along and beside block 404 in the city of Houston, which block belongs to the plaintiffs; they claimed title to the strip of land between the curb line and the fence on the southwest side of Calhoun avenue between Main and Fannin streets, being the strip of land desired by the city to widen and pave that street.

The city, by way of cross action, asserted title to the strip in con-

troversy by dedication, prescription and limitations; there were also reciprocal claims for damages between the opposing parties and a cross action for such a recovery by the Construction Company over against the city, but all these were denied and no complaint upon that score has been presented on appeal, which was by the city alone. .

The trial court submitted two special issues to a jury relating to the Scanlans' claim for damages which were answered unfavorably to them.

The trial court refused to submit the city's cross action and claim to said strip of land, by dedication, prescription or limitations, because, as stated by the court in its judgment, "the city failed to introduce and offer sufficient evidence to justify the submission of its claim to the property involved in this suit, to the jury * * * and therefore decided against the city upon such cross-action and pleas."

Judgment was rendered in favor of the defendants upon the question of damages, but for the plaintiffs perpetually enjoining the defendants from destroying the grass, herbage and trees on the property in question, southwest of the southwest curb line as it existed at the time the defendants began the paving of Calhoun avenue, and from placing any hard surface pavement for vehicular traffic southwest of said curb line on plaintiff's property.

The city of Houston alone appealed, resulting in an affirmance of the trial court's judgment, by the Court of Civil Appeals. 16 S. W. (2d) 550.

It was contended by the city that there was sufficient evidence to create an issue of fact as to the city's defenses, which should have been submitted to the jury.

A majority of the Court of Civil Appeals held that although the city objected to the court's charge because the issue of dedication was not submitted, it did not make written request for such submission according to the provisions of articles 2185 and 2190, Rev. Stat., 1925, and therefore the question was not properly raised.

As concerns limitations and prescription, there was neither written request for, nor objection to the charge omitting, the submission of either, and those matters therefore passed out of the case, before the Court of Civil Appeals.

However, that court did hold "were it proper to pass on the sufficiency of the evidence to warrant the submission of an issue as to whether the city had acquired by dedication the right claimed, a majority of the court would hold that it was."

The failure to submit any issue on dedication was an evidence that the trial court was of the opinion that the evidence did not raise the issue. The city objected to the court's charge because it failed to submit such an issue, the objection being based on the ground that the evidence did raise

that issue. The trial court overruled the objection, thus indicating the opinion that the evidence did not raise the issue.

The city's application for writ of error here is based upon the single proposition that "it is not necessary to request in writing the submission of an issue, where the party has by his objection and written exception to the charge called the court's attention to the failure to submit this issue to the jury."

Before an issue should be submitted, there must be some evidence to sustain the pleading raising such issue, and if there be no evidence adduced, the issue should not be submitted.

It appears from the uncontroverted evidence in the case that Joseph R. Morris owned block 404 in 1870; he conveyed it to T. W. House in February, 1883; House conveyed to T. H. Scanlan in March, 1883.

Plaintiffs below are the heirs of T. H. Scanlan (now deceased) and he and they have occupied said property ever since such purchase from House in 1883.

Morris placed a fence around the block and planted a row of trees along the north, or Calhoun street, side of the property. This fence remained until April, 1893, when it was taken down by the Scanlans and replaced by a stone curb of the approximate height of one and one-half feet, which was sufficient to constitute a barrier against carriages and other vehicles. In 1915 the Scanlans replaced the stone curb by a combination curb and gutter, which remained in place until forcibly removed by the city's employers in the summer of 1927, immediately before the filing of this suit.

The stone curb and combination curb and gutter were located on the same line and in the same place as the old fence.

About 1911 the Scanlans built a concrete walkway or sidewalk south of the curb, and the strip between the walkway and the curb is the land involved in this suit. The row of trees was between the curb and walkway; these trees were all standing until about 1920, when one died and at intervals thereafter and until 1927, when this ligitation began, all but two of the trees had died.

The Scanlans have, ever since their acquisition of the property, watered, trimmed, and cared for the grass, trees and flowers. No part of the property south of the curb has ever been used by the public for vehicular traffic, though the concrete walkway was used by pedestrians.

It was testified by Miss Scanlan that her father, and after his death, his children, claimed to own the property enclosed within the original fences and that the north line of their claim was located where the north fence stood and afterwards where the curb replaced the fence.

She further testified that the concret curb was placd there voluntarily by her family, they were not so ordered by the city, the concrete walkway was not built by order of or notice from the city, nor did the city give

them the grades and lines for the walkway, which was not in line with any sidewalks on the street in the block on either side, but it was further south than any of them.

She testified also that there were no walkways or sidewalks on any side of the property when it was bought by her father, and that the trees were all inside the enclosure.

It appears that south of the walkway the Scanlans have constructed a fence and the distance between the fence and curb is about fifteen feet and the walkway is three and one-half feet wide.

The only testimony supporting the claim of dedication was to the effect that pedestrians used the concrete walkway in passing to and fro; that the lawn or parkway between the walkway and curb was unobstructed to the extent that nothing prevented pedestrians from using it, but there is no evidence showing that it was generally or customarily so used. As the judgment by its terms affects only the parkway and not the concrete walkway, our discussion is confined to the parkway alone.

As said in Wolf v. Brass, 72 Texas, 133, 12 S. W., 159, 160, "to constitute a dedication so as to estop the proprietor and his privies there need not be a formal grant by deed, nor is it necessary that use by the public should be continued for so long a time as to raise the presumption of a grant. It is sufficient if there has been some act or declaration upon the part of the owner of the fee indicating unequivocally his purpose to dedicate and the public has used the property for the purposes to which the act or declaration of the proprietor indicates it was his intention to dedicate it."

The vital principle, as seen from the authorities, upon which the doctrine of dedication rests, is the intention of the owner to dedicate. This intention may be implied from the owner's acts, coupled with the intention with which he did the acts. Ramthun v. Halfman, 58 Texas, 551; Clement v. City of Paris (Texas Civ. App.), 154 S. W., 624; City of Pearsall v. Crawford (Texas Civ. App.), 213 S. W., 327.

But the intention to dedicate must be shown or be inferable, by sufficient evidence, from the owner's acts. I. & G. N. R. Co. v. Cuneo, 47 Texas Civ. App., 622, 108 S. W., 714; 18 C. J., 51.

We have concluded after a careful consideration of the evidence adduced to support the city's claim of a dedication that its probative force is so weak that it only raises a mere surmise or suspicion of the existence of a dedication and that there was not, in legal contemplation, "any evidence" thereof. Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059; G. H. & S. A. Ry. Co. v. Faber, 77 Texas, 153, 8 S. W., 64; Radley v. Knepfly, 104 Texas, 130, 135 S. W., 111.

As said by Judge Brown, in Texas Loan Agency v. Fleming, 92 Texas, 458, 49 S. W., 1039, 1040, 44 L. R. A., 279:

"It requires no less testimony to support a finding of fact made by a

Court of Civil Appeals than if such findings were made by a jury in the trial of the cause. * * *

"The fact that there may be evidence which was admissible does not preclude the trial court from determining the question of its legal sufficiency. The same test is applicable to a finding of fact by the Court of Civil Appeals when challenged in this court upon the ground that it is without evidence to support it. If the testimony be such that a district judge should instruct a verdict, then a finding by the Court of Civil Appeals upon such evidence would be equally untenable as a verdict."

Therefore the trial court correctly refused to submit the issue.

The judgments of the district court and Court of Civil Appeals affirming the same, are affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.