GREENWAY PARKS OWNERS ASSOCIATION V. CITY OF DALLAS.

No. A-6580. Decided March 26, 1958.
Rehearing Overruled April 30, 1958.
Second Motion for Rehearing Overruled July 16, 1958.
Third Motion for Rehearing Overruled October 1, 1958.
(312 S.W. 2d Series 235)
(316 S.W. 2d Series 74)

*Bowyer, Thomas, Crozier & Harris, William W. Sweet, Jr.,* and *Norman R. Crozier, Jr.,* all of Dallas, for petitioners.

*H. P. Kucera,* City Attorney, *Arthur Schroeder, Jr.,* and *Charles C. Wells,* all of Dallas for respondent.

*Henry Akin, of Dallas,* for Mrs. Rhea H. Clark.

MR. JUSTICE CULVER, delivered the opinion of the Court.

Greenway Parks Owners Association, a corporation, sued Rhea H. Clark and Louise Timmerman, successors to all rights, title and interest reserved in the developers of Greenway Parks, in trespass to try title to a certain tract of approximately seven acres. The City of Dallas intervened claiming title by dedication and limitations. The original parties to the suit, the petitioner, Greenway Parks Owners Association, and the defendants, Clark and Timmerman, entered into an agreement by the terms of which the latter conveyed all of their rights, title and interest to Greenway Parks Association. Accordingly judgment was rendered for the Association and against the defendants, Clark and Timmerman.

The trial proceeded on the issues raised between the City of Dallas and the Association resulting in a judgment against the City and for the Association. The Court of Civil Appeals reversed and rendered awarding title to and possession of the tract to the City of Dallas. 306 S.W. 2d 742. We are of the

opinion that the Court of Civil Appeals erred in so holding, and that the judgment of the trial court should be affirmed.

In 1928 Drane and Stephenson subdivided into a residential addition a large tract lying north of and outside the city limits of Dallas and filed a plat with the county clerk showing the area in lots and blocks with streets, parkways and parks. The six parks were lettered "A" to "F" inclusive. The property here in controversy is "A Park," considerably larger than the others, and embraces all of the addition lying east of the railroad tracks. The dedication accompanying the plat,[1] described the subdivision reads in part as follows:

"Those parts only of the streets and avenues as shown on the Map between curb lines, suitable for vehicular traffic are hereby dedicated to the public, and such dedication on said map or existing, lying between curb lines or elsewhere, and it is expressly stipulated herein that all sidewalks, parks, private parks, parkways, park spaces and walks for entrance to parks are not dedicated to the public but same are in all things reserved in the grantors F. N. Drane and J. P. Stephenson, their heirs, administrators, executors or assigns, and any indulgence of said grantors to the public in regard to the use of same shall never be construed as a prescriptive dedication or grant of any kind or character and same shall be construed as a mere license, revocable at will, excepting that the lot owners in said addition are to have the irrevocable right to use said sidewalks as a private way of ingress and egress from their said property and to construct an entranceway from the curb line of the street which the lot faces, to their lots, but no such entrance is to be constructed from Greenway Boulevard, and excepting further that the property above mentioned herein reserved to the grantors and not dedicated to the public shall never be used by grantors or their heirs, administrators, executors or assigns, for any other purpose or purposes than those designated on the plat, excepting the part known as Block B, which may be used by grantor for field office purposes; provided, however, that when and in case the owners of the lots in the several installments of Greenway Parks, shall vote to discontinue the maintenance charge against said lots as provided for in the respective deeds of conveyance from grantors of said lots, then said sidewalks, parks, parkways, park spaces, and walks for entrance to parks, shall be and are hereby dedicated to the public for the respective uses and purposes as designated on the plat,

---

1.—The plat is shown in the Court of Civil Appeals' opinion and will not be reproduced here.

but in such event, spaces designated on the plat as private parks, shall be and vest for the sole use and benefit of the owners of lots abutting on said private parks, respectively."

At the same time Drane and Stephenson filed an instrument entitled "Declaration as to Maintenance Fund of Greenway Parks Addition," providing that the maintenance fund may be used for the following purposes:

"For lighting, improving, and maintaining the streets, sidewalks, play parks, parks, private parks, and parkways, including all grass and planted areas within the boundaries of said streets, sidewalks and parks; for planting trees and shrubbery and the care thereof; for the care of vacant property, removing grass and weeds; for collecting and disposing of garbage, ashes, rubbish and the like; for employing policemen and watchmen; for expenses incident to the enforcement of building restrictions, conditions, obligations, reservations, rights, powers and charges; and doing any other things necessary or desirable in the opinion of the grantors, to keep the property neat and in good order, or which in the opinion of the grantors may be of general benefit to the owners and occupants of the land included in said Installment."

This declaration fixed a maximum annual maintenance charge to be levied against the lot owners, based on the number of square feet in the lot, and provided that these charges be secured by a lien upon the lots and payable to grantors annually in advance. The declaration reserved to the grantors the option of organizing a "Greenway Parks Home Owners Association" to be composed of lot owners in the addition and of transferring and assigning to that Association the authority to collect and expend the maintenance fund.

In 1941 certain of the lot owners in the addition petitioned for annexation to the City of Dallas. Others in opposition filed a counter petition. At the City Council's suggestion a vote was had among the property owners on this question and a majority favored annexation. The city then by ordinance in 1942 annexed the entire Greenway Park Addition.

After annexation the parcel of land described as "A Park" was listed as a public park by the city authorities. Up until 1950, according to the evidence, at various times the city of Dallas mowed the grass and weeds as a health and fire protection measure, trimmed some of the trees and shrubbery that

interfered with street traffic, drained stagnant waters that collected and at one time erected a barricade to keep out vehicular traffic.

In 1950 the Dallas Park Department made a written agreement with the Park Cities[2] Y.M.C.A. authorizing the use of this tract for athletic and playground activities with the condition that the Y.M.C.A. should be responsible for the upkeep of the park area. The term of this agreement was for one year with the right of extension for additional one year periods, but no extension after three years from date. Under this agreement the Y.M.C.A. installed some equipment, laid out baseball diamonds, erected backstops and football goal posts. It supervised play, tended the grounds, and kept the grass mowed. The City of Dallas itself has taken no care of the property since 1950. Some consideration had been given by the City Park Board to the construction of a swimming pool on this tract, but no decision was taken on that matter up to the time of the trial. No ad valorem taxes had been rendered or paid on this tract by petitioner or anyone else nor had any taxes been levied or assessed by the City of Dallas.

The testimony as to the collection from the lot owners and expenditure of the maintenance fund is rather sketchy. Some lot owners paid and some did not. The evidence does not disclose affirmatively that the collection of these charges was ever wholly abandoned, and certainly the lot owners had not expressly so voted, but to the contrary it appears that collections and expenditures continued up to the time of the trial. It is undisputed, however, that none of the proceeds from this source have ever been spent on the maintenance or development of "A Park."

The Court of Civil Appeals in its majority opinion sustained all of the City's contentions: (1) that the filing of the plat and the terms of the dedication constituted an express dedication of the park to the public, principally for the reason that the recited reservations in the dedication are void as against public policy; (2) that when the property owners voted in favor of annexation they thereby in effect voted to discontinue the maintenance tax; (3) that petitioner and the property owners elected to abandon the maintenance tax by entering into a contract of purchase and sale of the property with the defendants, Clark and Timmerman with the intention of diverting the property to commercial use and thus effected a dedication of the property

---

2.—Park Cities is a separate municipality adjoining the City of Dallas.

to the public; (4) the city had acquired a fee simple to title to the property under the 3, 5 and 10-year statute of limitations and by prescription; (5) that the property owners are estopped from challenging the city's title to the 7-acre tract.

■ This case was tried to the court without the aid of a jury and although no findings of fact or conclusions of law appear in the record, all disputed questions of fact must be resolved in support of the trial court's judgment. Thus for the city to prevail it must show dedication to the public or title as a matter of law.

■ On the first point the city contends that the developers of this addition fully intended that it would ultimately be incorporated into the City of Dallas, citing the designation in the dedication as "Greenway Parks, an addition to the City of Dallas," and that the maintenance charges were to provide for the functions and benefits of urban life only in the meantime. It argues that upon annexation all the functions for which these funds were to be expended were taken over and provided for by the city and that the collection and expenditure of these funds for those purposes would be an interference with the control of those functions by the city. On this point it cites Jones v. Carter, 101 S.W. 514, 45 Texas Civ. App. 450, that lays down the following rule:

" '* * * No condition may be annexed which will take the property from the control of the duly authorized public officers, or which will in any way impair the usual exercise of the police power by the authorities. Should an attempt be made to annex such condition, the dedication will be upheld, and the condition will be held void. * * *.' "

But in that case the condition properly held void was that the subdivider reserved to himself the exclusive right to operate water and telephone systems in the addition. Similar reservations are also condemned in Moser v. Greenland Hills Realty Co., 300 S.W. 177, er ref.; City of Beaumont v. Calder Place Corporation, 143 Texas 244, 183 S.W. 2d 713; City of Fort Worth v. Ryan Properties, Inc., Texas Civ. App., 284 S.W. 2d 211. The "Declaration" does not make obligatory the application of these funds for any particular purposes but expressly provides that they shall be devoted "for any or all of the following purposes." And further that the charge may be adjusted from year to year as the needs of the property required. In addition to "A Park" there are five smaller parks in the addition to

which no claim of public ownership is asserted by the city. To provide for the care of these parks is not an interference with the performance of governmental functions by the City of Dallas and there are other purposes provided for in the declaration which in our opinion likewise would not constitute such an interference. The President of petitioner testified that the Association employs a crew not for the regular pickup and disposal of garbage, but to remove trash and rubbish throughout the addition, to mow the grass on vacant lots and on the parks and parkways and for the maintenance and upkeep of the entire area. We do not believe the application of funds for these purposes over and beyond the services that the City is obligated to perform, is an interference with governmental functions so as to void the assessment and collection of these charges.

■ We are of the opinion that a majority vote of the property owners in favor of annexation by the city cannot be said as a matter of law to be the equivalent of a vote to discontinue and abandon the maintenance charges. The city, of course, had the right to annex without the consent of the property owners. The referendum was proposed by the council only in deference to the wishes of the majority so that the vote for annexation would be no more effective to discontinue the maintenance charge than annexation without such a vote.

The contract with Mrs. Clark and the conveyance by her to the petitioner of her right, title and interest, it seems, would have no effect upon the terms of the dedication and the declaration or serve in any way to change the legal status of this property. The petitioner merely acquired whatever rights were reserved to the original developer. The individual lot owners are neither parties to the contract nor to this suit. The judgment for the petitioner and against Mrs. Clark cannot and does not purport to diminish or take away any rights vested in the lot owners who purchased in reliance upon the plat, the dedication and the declaration.

The contracts did obligate this petitioner to make "all reasonable efforts" to sell or lease "A Park" and to pay over to Mrs. Clark a portion of the proceeds if and when received by petitioner. A vendor's lien was reserved by Mrs. Clark to guarantee that payment. From this the intention may be implied on the part of petitioner to sell, if permitted, this property for commercial development and abandon it entirely as a park. Presumably the officers, directors and stockholders of petitioner are lot owners in the addition, but the petitioner does not purport to

represent all of the property owners or to be authorized to speak for them. Corporations can only be formed in accordance with statutory provisions and people are not to be included as stockholders or members without their assent. Whether the petitioner could in the future dispose of this property for commercial purposes is a question not before us here. Even so the petitioner tacitly agrees that such sale could not be consummated so long as any individual property owner asserted his right to object.

At the same time should the Association determine to apply a part of the maintenance funds to develop and maintain "A Park" as a private park for the use and enjoyment of the residents of the addition it would be within their power so to do. That action is not foreclosed by the contract with Mrs. Clark or by the judgment entered against her in conformity with the contract.

■ The city has not proved title as a matter of law to this property under the 10-year statute of limitations. Ordinarily reliance up limitations for title presents a fact question. While the city did list this tract on its roll of parks no steps were ever taken by the city to use it for park purposes. The mowing of grass, trimming of trees and shrubbery, and draining of stagnant water were not done to develop or maintain the tract as a park, but performed for the protection of the surrounding and nearby property owners and upon their complaints and insistence. Such acts are not sufficient to establish title by adverse possession. City of Dallas v. Etheridge, 152 Texas 9, 253 S.W. 2d 640.

It was only in 1950 that the city exercised its first act of dominion when it let the property to the Y.M.C.A. of another incorporated city for use as a playground. That agreement expired by its own terms at the end of 1953. It is not shown that the property owners of Greenway Parks had any knowledge of this agreement. The agreement has not been renewed and up to the filing of this suit the City of Dallas itself has not exercised any supervision or care or maintenance over the premises at all. The most that can be said favorably to the city's position is that one or more fact questions were presented to the court and resolved adversely to the city's position. W. T. Carter & Bros. v. Richardson, Com. App., 236 S.W. 978; Hardy v. Bumpstead, Com. App., 41 S.W. 2d 226, 76 A.L.R. 1488; Pearson v. Doherty, 143 Texas 64, 183 S.W. 2d 453.

■ Likewise the claim by prescription must fail for the city has not shown beyond dispute a continued uninterrupted use by

adverse claim of right for the full prescription period, which in this state is ten years. Porter v. Johnson, Texas Civ. App., 151 S.W. 599; Phillips et ux v. Texas Pacific Ry. Co., Com. App., 296 S.W. 877.

No claim can be sustained under the 3-year statute of limitations, Art. 5507, V.A.C.S. or the 5-year statute, Art. 5509-10, V.A.C.S., for the reason that the City has proved neither title nor color of title nor registered any muniment of title.

We now turn to the contention that petitioner is estopped from challenging the City's title to this tract or in other words the claim that the tract has been dedicated to public use impliedly or by estoppel in pais. The evidence relied upon is substantially as follows: (1) that none of the proceeds of the maintenance tax imposed against the lot owners were ever expended for the upkeep and maintenance of "A Park;" (2) that the lot owners and the developer of the addition permitted the City to expend public money for the care and upkeep of a park; (3) that the City since annexation has treated the property as a public park by draining, leasing, mowing and tree trimming and by granting use of the property to the Y.M.C.A. for a park and playground; (4) that the City has exempted the property from all taxation during this 14-year period and this without protest from the petitioner or the lot owners; (5) that the Dallas City Council specially considered this tract at the time the annexation ordinance was adopted and annexed it on the basis that it was a park listing it on the roll of public parks. These facts singly or collectively are not sufficient to establish dedication by estoppel as a matter of law.

The discussion of much of this evidence under other points is equally applicable here and repetition is not necessary. It may be added that the record does not reflect any representations made to the City Council by lot owners or by the developer of the addition, or by petitioner aside from the instruments on file with the county clerk. The Honorable Woodall Rodgers, Mayor of Dallas at the time of the annexation, testified in effect that no question was raised as to whether the park was dedicated to the public or not. Apparently it was assumed by the Council that the tract was a public park, and thus acquired by the City upon annexation. As to the matter of taxation, the record merely reveals that no one rendered the property for taxation nor did the City make an assessment or levy. No injury on this score has resulted to the City for it may now proceed to collect what-

ever tax is due in accordance with law. Vol. 16, Am. Jur., Dedication, Sec. 54.

■ In order to constitute dedication by estoppel or implication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereby by the public. City of Tyler v. Smith County, 151 Texas 80, 246 S.W. 2d 601; International & G. N. R. Co. v. Cueno, Texas Civ. App., 108 S.W. 714, er. ref.

This Court said in City of Houston v. Scanlan, 120 Texas 264, 37 S.W. 2d 718, 720, that:

"The vital principle, as seen from the authorities, upon which the doctrine of dedication rests, is the intention of the owner to dedicate. This intention may be implied from the owner's acts, coupled with the intention with which he did the acts.

"But the intention to dedicate must be shown or be inferable, by sufficient evidence, from the owner's acts."

In that case the Court held that the mere use of the concrete walkway by pedestrians was not sufficient to raise a fact question as to the intention to dedicate, the use not being general or customary.

The intention to dedicate must be shown by something more than an omission or failure to act or acquiesce, on the part of the owner. Worthington v. Wade, 82 Texas 26, 17 S.W. 520; Gulf, C. & S. F. Ry. Co. v. Montgomery, 85 Texas 64, 67, 19 S.W. 1015; International & G. N. R. Co. v. Cueno, supra. The use by the public of an unenclosed lot in a city without objection by the owner is not in itself sufficient evidence of an intention to donate.

We will notice the following authorities chiefly relied upon by the City to support its claim of estoppel. Owens v. Hockett, 151 Texas 503, 251 S.W. 2d 957, 958, quotes with approval from Elliott, Roads and Streets, 2nd Ed., p. 121:

"* * * If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert

that there was no intent to dedicate, no matter what may have been his secret intent." Sec. 124.

But in our case we think the City has not conclusively shown that either it or the public has acquired rights that would be lost by permitting petitioner to assert that there was no intent to dedicate to the public. Without the necessity of a recital of the evidence the only question before us in the Owens case was whether there was any evidence to support the fact finding or implied dedication. The same is to be said of the decision in Casper et al. v. Miller, 159 Kan. 488, 156 Pac. 2d 550, holding that the finding of fact fully supported the conclusions of law applied by the trial court. The evidence was much stronger in that case than in the one presently before us, but even so there was no holding that it was conclusive as a matter of law.

In City of Houston v. Hughes, 284 S.W. 2d 249, n.r.e., plaintiff was precluded from denying dedication of a street to public use where the plat showed the street in question and eight lots bordering on the street had been sold by plaintiff to various parties and the lots had been purchased in reference to the plat. The same rule of law was applied in Maisen v. Maxey, 233 S.W. 2d 309, 312, n.r.e. as tersely said by the court in that case: "* * * According to this and other authorities cited, appellant cannot now consistently disregard the record he made and the physical improvements he placed on the grounds developing the park area for public use while he was at the same time inducing people by reason of the record he made and the development of the grounds to buy lots in the Addition for residential purposes." The City also cites City of Erie v. Kahkwa Park Realty Co., 296 Pa. 281, 145 Atl. 815; Tribble v. Dallas Ry. & Term. Co. 13 S.W. 2d 933, er. ref.; Shields v. Harris Co., 248 S.W. 2d 510 er. ref. n.r.e., but they likewise do not bear out the City's contention here that petitioner is estopped as a matter of law.

It may be noted that the judgment of the trial court rendered for the petitioner and against the intervenor, City of Dallas, awarding title and possession to petitioner does so without prejudice to any contingent right, title or interest which the City of Dallas might have under and by virtue of the instruments of record affecting the dedication and platting of this addition.

For the foregoing reasons we here reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Opinion delivered March 26, 1958.

Rehearing overruled April 30, 1958.

MR. JUSTICE CULVER delivered the opinion of the Court.

■ In its second motion the City of Dallas challenges the statement in our original opinion to the effect that the City had the right to annex the addition without the consent of the property owners. The statement is incorrect. What we should have said is that the City had the right to annex without a formal election on the part of the landowners. We do take judicial notice of city charter provisions but these had not heretofore been called to our attention. It was not until 1945 that the City Council acacquired, by charter amendment, the power to annex without the consent of the territorial inhabitants. But this in no way alters our conclusion that the vote for annexation by the property owners is not a vote to abandon the maintenance charge as a matter of law. The trial court impliedly found that the property owners had not voted to discontinue that charge.

The facts about the so-called election seemed to be that a meeting of the property owners was called to consider the annexation of the addition to the City of Dallas or to the City of University Park or to the City of Highland Park. The meeting was attended by from 50 to 75 property owners and a majority of those present voted for annexation to Dallas. There was no discussion of the maintenance charge and no action was taken on that matter expressly one way or the other. The record does not reveal how many property owners there were in the addition at that time, nor how the vote stood. So that the evidence does not show that even a majority of all of the property owners in the area voted at that meeting for the annexation proposal.

At any rate we think there is a difference between a vote for annexation and a vote to abolish the collection of the maintenance charge. In our view there is nothing inconsistent about the owners agreeing for their property to become a part of the City of Dallas on the one hand, and the paying of a maintenance charge on the other, for the upkeep of private property in which the property owners of the subdivision have joint rights of user. In fact the maintenance charge has been levied and collected both before and after annexation and up to the present time and there is nothing in the record to indicate that this action has not at all times been taken with the consent and acquiescene of a majority of the owners. Actually the converse would

seem to be true, though some have indeed objected and refused to pay.

The City's second motion for rehearing is overruled.

Opinion delivered July 16, 1958.

Third motion for rehearing overruled Oct. 1, 1958.