**H. A. MADDOX et al., Trustees of the Church of Christ of Richardson, Texas, Petitioners,**

v.

**Carroll H. MAXWELL, Respondent.**

No. A–9373.

Supreme Court of Texas.

June 26, 1963.

Rehearing Denied July 31, 1963.

**344**

Church of Christ of Richardson, Texas, hereinafter called plaintiffs, against Carroll H. Maxwell, hereinafter called defendant. Title to a strip of land approximately twenty feet wide along the west side of the church property is in controversy. The trial court, without a jury, found against the contention of Maxwell that the land was a public street by implied common-law dedication and rendered judgment for Maddox et al. One of the findings of fact of the trial court was that at no time did any member or trustee of the church intend to dedicate the property in controversy.

The Court of Civil Appeals, relying on Owens v. Hockett (1952), 151 Tex. 503, 251 S.W.2d 957, and City of Houston v. Hughes (1955, Tex.Civ.App.), 284 S.W.2d 249, error refused, n. r. e., has reversed and rendered judgment for respondent, holding that the strip of land in controversy was a public road or street by virtue of an implied common-law dedication and that the trial court erred in not so holding. 362 S.W.2d 147.

For the respondent to prevail in this Court, he must show dedication as a matter of law. Greenway Parks Home Owners Ass'n v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235, rehearing denied, 159 Tex. 46, 316 S.W.2d 74. We cannot find support for such a holding in the facts of this case. We hold that the facts of this case show, as a matter of law, that the strip of land in question was never dedicated, expressly or impliedly, as a road or street.

At the start of the trial, the parties stipulated under Rule 266 "that plaintiffs hold the record title to the land described in their pleadings and are to recover the title and possession of said land, except to the extent that the defendant is able to prove that a part of said land is a public road or *thoro*fare * * *."

The Church of Christ of Richardson, Texas, of which the plaintiffs herein are the trustees, owned a tract of land, of approximately two acres, which was approximately the east part of a larger tract north

Wynne, McKenzie, Jaffe & Tinsley, Henry Baer, Dallas, for petitioners.

Spafford, Ledbetter, Freedman, Hamilin & Gay, Warren Whitham Dallas, for respondent.

GRIFFIN, Justice.

This is a suit in trespass to try title brought by H. A. Maddox, C. L. Green, Frank C. Morris, V. L. Paul, W. C. Wallis, Sr., and W. E. Williams, Trustees of the

of Phillips Street in the town of Richardson. Adjoining the church property on the west and also adjoining Phillips Street on the north was a tract of land owned by a Mr. and Mrs. James. The Jameses' home was on the south part of their tract along Phillips Street and was known as 329 Phillips Street. Prior to 1950, the Jameses sold the north part of their land to their son-in-law, Fred Holley, who built his home thereon. This house faced east, which was toward the adjoining church property. North of the James and Holley land was a tract of land owned by a Mr. and Mrs. Cassidy and which adjoined the north part of the church land on the west. There is a plat of this property set out in the Court of Civil Appeals' opinion and we will not reproduce it here.

Prior to 1950, the evidence is undisputed that those people who came to visit or transact business with either the Jameses, Holleys or Cassidys would drive across the church tract not occupied by the church building in varying directions so as to make tracks and trails indiscriminately across the church tract.

To remedy this condition and to protect their property, the church in 1950 decided to, and did, erect a chain link fence twenty feet east of their west line across their property. This left a twenty foot strip separated by this fence from the balance of the church property. The church at the same time erected a similar fence across the whole length of their north property line which separated the twenty foot strip from the lands lying immediately along the north end of the strip. This fence prevented any traffic north to the next street.

The Jameses entered their property from Phillips Street by first driving on the church property but near the west line thereof. The Holleys entered the Jameses' property at the same entrance, and if going to Phillips Street or coming therefrom, continued to drive on the church property and near the west line thereof until they reached their own driveway to their improvements. The

Cassidys had one or more rent houses and a residence on their tracts, and in going to or from Phillips Street, drove along near the west line of the church property. The west side of the church property was covered with grass and weeds, except some authority—the record is not clear if it were the city or county—had graveled a narrow driveway leading from Phillips Street north to the Cassidy rent houses.

After the church had decided to erect its fences, and under specific directions from the church congregation, a committee of three or more of the trustees called on Mr. Holley and Mr. Cassidy to inform them of such decision. Mr. C. L. Green, one of the church trustees and one of the committee to notify the Jameses, Holleys and Cassidys, testified as follows:

> "Well, people were using the property and going in various directions and damaging the property and driving trucks and cars and what have you, when it was raining and cutting ruts all over the property, and we contacted the parties who owned the property and told them that we were going to build a fence to protect our property, but we wanted to be neighbors and that we would allow them temporarily an outlet until such time as the church needed the property for their use, but we were going to build our fence on the north and tie onto our corner."

Specifically testifying as to what the committee told Mr. Cassidy, Mr. Green testified:

> "We told him we were going to build a fence to protect our property, but at the same time, to be neighborly, and to get along, we felt the Christian thing to do would be to allow him permission to use it on a temporary basis and the fence was to be a temporary thing and if ever the church should grow to the point that we needed the property that it was understood that we weren't releasing any rights whatsoever in regard to our property."

The other committee members gave testimony of a similar nature.

The record shows that Mr. and Mrs. James were elderly and that their son-in-law attended to their business. Mrs. James testified herein by deposition and confirmed that Mr. Holley attended to their business and that she and Mr. James recognized that they were using the strip of land by and with the permission of the church; that they made no claim to use the strip adverse to the church, and that they recognized at all times that the church owned the strip and could deny them the use of the strip at any time the church so desired. Mr. Holley gave similar testimony as to his understanding as to his right to use the strip and of the church trustees visiting him and outlining his rights to use the strip.

Mrs. Cassidy testified that the church committee came to talk with Mr. Cassidy about the use of the strip—sometimes referred to in this record as Cliff Street. She said she was in the house at the time the committee talked with Mr. Cassidy, but did not hear the conversation. Mr. Cassidy had died in 1957, and was not available as a witness.

Mrs. Cassidy further testified that she remembered that the church gave Mr. Cassidy permission to use the lane just prior to its erecting its fences, and that Mr. Cassidy made a donation to the church shortly thereafter, and he was not a member of that church.

The church erected its fence in 1950, and they removed the west fence in the summer of 1960.

A driveway on this strip was covered with asphalt some few years after the church built its fence. Mrs. Cassidy testified that this asphalt covering was put in by Dallas County as a result of a request made by her husband. This is about as definite date as the record shows when the asphalt was put down—sometime between the erection of the fence in 1950 and Mr. Cassidy's death in 1957.

The church was not consulted about the installation of the asphalt, gave no permission to anyone to install it, did not know who installed it, but made no objection to the asphalt being put down.

In 1952, Lone Star Gas Company installed a gas line from Phillips Street north in the twenty foot strip, running about 210–220 feet north about six feet from the west line of the church property. This line was to serve the three houses on the Cassidy property. The gas company neither asked nor received any permission from the church to install this line, but relied on a copy of an order and resolution of the Board of Commissioners of the City of Richardson, Texas, January 30, 1952, which purported to make the twenty foot strip a public street of Richardson, and authorize the gas company to lay its feeder line. The church had no notice of this ordinance and order prior to the filing of this suit, did not consent to the passage of such ordinance, nor the laying of the gas line, but did not object to the gas company laying the line on the strip. The foreman of the crew laying this line testified he did not believe there was any asphalt on the strip when the line was laid. The line was buried beneath the surface of the strip.

It was stipulated by all parties that this purported ordinance making the strip a public street was not in the Minutes of the City Council of Richardson at the time of the trial of this cause.

This strip is used by the postman, the dairy deliveryman, and others having business with, or visiting with the occupants of the houses fronting thereon.

Sometime between the death of Mr. Cassidy and 1960, Mrs. Cassidy purchased the property adjoining and to the west of the James and Holley tracts of land. This purchase adjoins a part of the original Cassidy property on the south and runs through to Phillips Street.

In early 1960, Mrs. Cassidy sold her holdings in this vicinity to defendant, Max-

well, and he erected an apartment house on the north part of the Cassidy land. He sold and had removed the Cassidy improvements on this land, prior to the erection of this apartment house. In order to secure a building permit from the City of Richardson for the erection of this apartment house, it was necessary that the defendant file plans with the city's building inspector. The first set of plans filed, and the ones on which preliminary approval was given, showed that defendant was entering his apartment parking lot from Phillips Street, on the south, across his property in the rear of and to the west of the James and Holley property. Later, defendant filed an amended plan, showing entrance to the parking lot by using the strip in question.

This case is controlled by our case of Greenway Parks Home Owners Association v. City of Dallas (1958) 159 Tex. 46, 312 S.W.2d 235.

In that case the City of Dallas was contending that a certain area known as "A Park" had been dedicated by the original developer to the use of the public. At the time of the subdivision, this development was outside the City of Dallas, but was later annexed to Dallas. The City had listed this tract as a public park and had at various times mowed the grass and weeds as a health and fire protection measure, trimmed some of the trees and shrubbery that interfered with street traffic, drained stagnant waters that had collected and at one time erected a barricade. Dallas had also made a written agreement with Park Cities' Y.M.C.A., authorizing the use of the tract for athletic and playground activities under the condition that the Y.M.C.A. would be responsible for the upkeep of the park area. No one had rendered the property for taxation, nor had any governmental body placed the property on the tax rolls. The area was first subdivided in 1928, and was annexed to the city in 1942, and suit was filed in July, 1955. The trial court rendered judgment against the city and for the Association, and that judgment had been reversed and rendered by the Court of

Civil Appeals, awarding title and possession of A Park to the City of Dallas.

The Supreme Court reversed the Court of Civil Appeals, 306 S.W.2d 742 and affirmed the trial court's judgment. In our opinion, we said:

> "In order to constitute dedication by estoppel or implication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereby by the public. City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601; International & G. N. R. Co. v. Cuneo, 47 Tex.Civ.App. 622, 108 S.W. 714, er. ref.

> "This Court said in City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718, 720, that:

>> " 'The vital principle, as seen from the authorities, upon which the doctrine of dedication rests, is the intention of the owner to dedicate. This intention may be implied from the owner's acts, coupled with the intention with which he did the acts. * *

>> " 'But the intention to dedicate must be shown or be inferable, by sufficient evidence, from the owner's acts.'

> "In that case the Court held that the mere use of the concrete walkway by pedestrians was not sufficient to raise a fact question as to the intention to dedicate, the use not being general or customary.

> "The intention to dedicate must be shown by something more than an omission or failure to act or acquiesce on the part of the owner. Worthington v. Wade, 82 Tex. 26, 17 S.W. 520; Gulf, C. & S. F. Ry. Co. v. Montgomery, 85 Tex. 64, 67, 19 S.W. 1015; International & G. N. R. Co. v. Cuneo, supra. The use by the public of an unenclosed lot in a city without objection by the owner is not in itself suffi-

cient evidence of an intention to donate."

It is true that in the Greenway Park Home Owners Association case, the subdividers of the tract did so by written instruments which recited no dedication was made, nor intended to be made, as to the property shown on the dedication plat; while in the case at bar there was no written instrument executed by the church trustees.

In our case the undisputed testimony of the trustees, Mr. Holley and Mr. James, as well as Mrs. Cassidy, is that the church gave permission to these landowners to use the strip as a means of ingress and egress. All but Mrs. Cassidy testified that the trustees told them that the church was giving permission to use the strip only until it was needed by the church and that they recognized at all times they were using this strip subject to the church's pleasure. Mrs. Cassidy did not hear the conservation with her husband.

From the undisputed evidence, we hold there is not shown the church had any intention to dedicate this strip, at the time it erected its fence. On the contrary, the undisputed evidence shows there was no such intention on the part of the church, and use only by permission of the church was granted. Without an intention to dedicate, there could be no dedication in this cause.

■ We have examined the assignments of error filed by defendant in the Court of Civil Appeals in order to determine if any of them could lead to an affirmance of the Court of Civil Appeals judgment. We find no such assignments. All assignments in the Court of Civil Appeals, except those sustained by that Court, if sustained would lead only to a reversal and remand, and we have no jurisdiction to review them, since they are not brought here by cross points of error.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.