**J. S. HUDSON et al., Appellants,**

**v.**

**Jack GAINES, Appellee.**

**No. 796.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 8, 1973.

Rehearing Denied Dec. 6, 1973.

Dean Patton, Morrill & Patton, Beeville, David Longoria, Asst. Atty. Gen., Austin, for appellants.

Reese D. Wade, Newton & Handly, Beeville, for appellee.

## OPINION

BISSETT, Justice.

In this suit, Jack Gaines, plaintiff, sought to have an existing roadway adjudicated to be a public road. The jury, in response to the several issues submitted, found that the road had never been dedicated as a public road, and that it had not been used and travelled by the public generally for a continuous and uninterrupted period of more than ten years after it was opened up in the year 1955. The trial court overruled defendants' motion for judgment in accordance with the jury verdict, and granted plaintiff's motion for judgment non obstante veredicto. Defendants have duly perfected their appeal to this Court. We reverse and render.

The trial court concluded "that the evidence did not raise an issue of fact, that a directed verdict for plaintiff would have been proper, and that the evidence was insufficient to support the jury's findings in answer to Special Issues Nos. 1, 2 and 3, and that said finding of the jury to each of said issues is against the weight and preponderance of the evidence so as to make a verdict for defendants manifestly unjust and that such motion for judgment non obstante veredicto should be granted." Judgment was rendered which decreed, in part, that, "the road described in plaintiff's first amended original petition be, and is adjudged to be a public road". Defendants were ordered to remove the fence and gate from across the road, and were enjoined from obstructing the road in any manner.

All of the evidence in the case must be considered in the light most favorable to defendants-appellants, and every

reasonable inference from the evidence is to be indulged in their favor. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952). It is elementary that a jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962).

The trial judge may not instruct a verdict, or, having let the issue go to the jury, render judgment non obstante veredicto where the issue or verdict has some support in the evidence, although the great weight and preponderance of the evidence may be the other way. In the latter situation he may grant a new trial, but this is all that he may do. On appeal, the Court of Civil Appeals exercises the same powers as the trial judge in the matter of upholding or setting aside verdicts by reason of evidence or deficiency therein. If the appellant raises only the point of "no evidence", which is a law question, then the jury verdict must be sustained if supported by more than a scintilla of evidence. Gulf, C. & S. F. Ry. Co. v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958). The question for determination in this case is whether there was any evidence of probative force on which the jury could have based it findings. Defendants, in their point four, contend that the trial court erred in granting judgment for plaintiff non obstante veredicto on its conclusions that the evidence was insufficient to support the jury findings, and that said findings are against the weight and preponderance of the evidence. We agree.

There is no dispute in this case as to the physical existence of a roadway on the ground. The roadway in question is situated about eight miles south of Beeville, Bee County, Texas, adjoins U.S. Highway 181, crosses the Southern Pacific Railroad Right of Way, and extends in an easterly direction from the Highway. Although plaintiff placed in issue the entire roadway (4,823 feet in length by 40 feet in width), the controversy centered around the portion thereof which was east of the Railroad Right of

Way, approximately 4,090 feet. About 1,215 feet of the roadway was located on land that was owned by the defendant Gerald W. Crawford, and the remaining 2,875 feet was located on lands owned by the defendants Hugh A. Hudson and J. S. Hudson. The said 4,090 feet of the roadway is situated entirely on the north side of the south boundary fence of defendants, which fence is also the north boundary fence of lands which are owned by plaintiff.

Within the memory of all witnesses, there has always been either a wire gap or a metal gate across the roadway. The wire gap was located at a point about 2,500 feet east of the Highway. It was removed in August, 1964, and a metal gate was installed in the roadway at a point approximately 750 feet east of where the gap had been located. This gate was situated about 1,525 feet west of the east end of the road. Neither the gap nor the gate were kept locked.

Certain lands which are owned by the Lara family are located at the east end of the road. North and east of the Lara lands are lands which are owned by the Olivares family. East of the Lara and Olivares properties lies Poesta Creek, which is also the east boundary of plaintiff's land.

Plaintiff, at all times, has had access to his own land through a gate situated at the northwest corner of his land, immediately east of the Railroad Right of Way. The objective of plaintiff's suit is to establish a public road from the Highway to a subdivision of part of plaintiff's land known as "Skidmore Ranch Estates" with an entrance to the same from the roadway in question, which entrance is about 3,100 feet east of the Railroad Right of Way. It is undisputed that plaintiff has access to the subdivision across his own property without the necessity of using any part of the roadway lying east of the gate at the northwest corner of his land.

The roadway has always been used by the defendants, their predecessors in title,

their guests and business invitees, for ingress and egress to their respective properties. It is the only way in and out of their lands. It is also the only means of access to lands which are owned by the Lara and Olivares families. Until the mid 1950's, access to the Lara and Olivares properties was by means of the roadway to the wire gap. From that point on, there was no roadway along the fence line, but there was a winding pasture road which eventually reached the aforesaid properties. About 1955, the roadway was extended eastward from the gap parallel to and along the fence line to the present southeast corner of defendant J. S. Hudson's land, about 4,090 feet east of the Railroad Right of Way; it continued from that point in a northerly direction through the Lara Lands and into the Olivares lands, thereby eliminating the necessity of using the then existing winding pasture road as a means of access into the Lara and Olivares properties.

At the time the roadway was opened in 1955, defendants' lands were owned by Sister M. Evangelist Miller; the surface thereof was leased by her to Joaquin Lara, the owner of the Lara Lands. Lara used the Miller lands in connection with the use of his own property. Lara remained as surface tenant of such lands until his death in 1959; the Miller lands were sold to J. N. Bluntzer in 1964; they were sold to Leonard Jones and J. A. Stewart in 1965; they were purchased by defendants in 1968.

The present occupant of the Lara property, Maximo Lara, testified that the various members of the Lara and Olivares families, their relatives, friends and business visitors used the roadway as a means of access to the Lara and Olivares lands which was the only way they had to get to these properties; that no one else had any business back of the east end of such lands, since Poesta Creek was a natural obstacle that did not have any bridges over it for vehicular crossing. He further testified that it was very seldom that anyone other than defendants, members of the Lara and Olivares families, their guests and friends used the roadway in question.

It was further established by the evidence that the school bus, for five or six years prior to the filing of the suit, used the road, going to the Lara residence, where it picked up school children and turned around. The children of defendant Hugh A. Hudson also rode the bus.

Plaintiff himself testified that the members of the Lara and Olivares families, their guests and "business people" used the roadway, but that he did not recall offhand that any others used the road.

Jack Stewart stated that during the time defendants' lands were owned by him and Jones, that the road was used by them, their workmen, and the Lara and Olivares families, but he never did observe any large number of other people travelling along the road.

R. V. Stubenthal, who was County Commissioner of Precinct 4, Bee County, at the time of the trial, testified that he was precinct foreman of Precinct 4 (in which precinct the road was located) during the mid 1950's. It was during this period of time that he, in his capacity as road foreman, opened up the road, and extended it eastward from the wire gap to the southwest corner of the Miller land, then northward to the Olivares place; several culverts, at county expense, were installed at that time. Sometime later, caliche, also at county expense, was put on the road. Stubenthal further testified that he never talked to the owner of the land in connection with the opening of the road or of the improvements which he made to the road, nor did he get permission from the landowner, Sister M. Evangelist Miller, to open the road or to make any improvements thereon. There is no evidence that anyone ever contacted Sister Miller concerning the opening or improving of the road. All of Stubenthal's dealings with respect to the road were with Joaquin Lara; he put caliche on the road whenever some member of the

Lara and Olivares families complained about the mudholes in the road. The metal gate across the road (which replaced the gap) was furnished by Stubenthal personally, and the posts were furnished by Lara. Stubenthal thought that the road was a public road. There was other evidence that on occasion, other persons, in addition to those already named, travelled the road.

■ The law is well settled that use of a roadway by the general public, along with use by the owner of the land upon which the road is located, does not, of itself, establish a public road by prescription. Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622 (1950). So long as the use of the roadway is consistent with the rights of the owner of the land upon which the same is situated, the use may never ripen into a prescriptive right in the public, regardless of the length of time the road is used by the public. O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878 (1960).

■ In order to establish a public road by prescription, it must be shown that its use by the general public was open, hostile, adverse, uninterrupted, exclusive and continuous for a period of more than ten years. A failure to prove any one of these essential elements will defeat the establishment of a public road by prescription. Mere use by the public is not sufficient. Weber v. Chaney, 5 S.W.2d 213 (Tex.Civ. App.—San Antonio 1928, writ ref'd); Dailey v. Alaird, 486 S.W.2d 620 (Tex. Civ.App.—Tyler 1972, writ ref'd n.r.e.); Rust v. Engledow, 368 S.W.2d 635 (Tex. Civ.App.—Waco 1963, writ ref'd n.r.e.); Sassmen v. Collins, 53 Tex.Civ.App. 71, 115 S.W. 337 (1909, writ ref'd).

■ The use of the road is permissive and not adverse, as a matter of law, if the roadway is also used by the owner of the land along with those who claim an easement by prescription. Gill v. Pringle, 224 S.W.2d 525 (Tex.Civ.App.—Waco 1949, writ ref'd). The evidence does not establish an adverse use in this case. A public road was not established by pre-scription as a matter of law. The evidence conclusively shows that the use of the road by those persons already identified as well as by others, was always consistent with the rights of defendants and their predecessors in title. There is nothing in the evidence which tends to show a claim of right of plaintiff or of any other member of the public to use the roadway to the exclusion of defendants. The fact that occasionally an "unknown" person travelled the road does not ripen that use into a prescriptive right on behalf of the public. Under the record, the use by the public was permissive and not adverse, as a matter of law.

■ There is no evidence of any express dedication of the roadway as a public road, so that any dedication must, of necessity, rest upon the premises of implied dedication. In order to constitute a dedication of a public road by implication, there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use, and an acceptance thereof by the public. Greenway Parks Home Owners Ass'n v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235 (1958); Eastex Wildlife Conservation Ass'n v. Jasper, etc., 450 S.W.2d 904 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.); Dinwiddie v. American Trading and Production Corp., 373 S.W.2d 867 (Tex.Civ.App.—El Paso 1963, n.w.h.). It is also well established that a tenant, co-tenant, or non-owner has no power to dedicate, expressly or by implication, a roadway as a public road; the owner of the land upon which the road is situated, and no one else, has that power. Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.Sup.1962); Chenowth Bros. v. Magnolia Petroleum Co., 129 S. W.2d 446 (Tex.Civ.App.—Dallas 1939, writ dism'd, judg. corr); Robbins v. Houck, 251 S.W.2d 429 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.).

■ In the present case, there is no evidence that shows an implied dedication of the roadway to a public use. The evidence will not support a finding that any land-

owner, at any time, clearly and unmistakably intended to dedicate the road absolutely and irrevocably to the use of and by the public. Absent such evidence, plaintiff may not prevail on the basis of implied dedication.

We have read the record in its entirety. Under the evidence adduced at the trial, we hold that the jury's findings were amply supported by evidence of probative value. Judgment should have been rendered on the jury verdict. Accordingly, it was reversible error to grant plaintiff's motion for judgment non obstante veredicto, and to render judgment that the roadway in question is a public road. All of defendant's points of error are sustained.

The judgment of the trial court is reversed, and judgment is rendered that plaintiff take nothing by his suit, and that the injunction issued by the trial court be and the same is hereby dissolved.