Robert NEMIR, Appellant,

v.

Joe Mike BATTS, Appellee.

No. 17514.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 20, 1979.

Lawrence, Thornton, Payne & Watson,
Billy M. Payne, Bryan, for appellant.

Robert D. Brewton, Navasota, Bennett & Keeling, Kenneth Keeling, Huntsville, for appellee.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

DOYLE, Justice.

Robert Nemir brings this appeal from a take nothing judgment rendered against him in a trespass action, and from an injunction prohibiting him from interfering with travel of Joe Mike Batts, his agents, servants and employees upon, over and across certain property allegedly owned by Robert Nemir. Batts contends that the disputed strip of land is owned by the City of Navasota as a dedicated public easement and as such, he and the general public have the right to travel upon the land. Nemir claims that the subject strip of land has never been dedicated to Navasota for any purpose and that Batts' use of it as a roadway is totally inconsistent with the public parking usage permitted by him on adjoining land which he owns.

We reverse and render.

In 1975, Batts purchased property in downtown Navasota, Grimes County, Texas, adjoining land which Nemir had owned since 1960. Shortly thereafter, Batts made improvements on his land to allow him to use a portion of Nemir's land as a roadway. The land in dispute is a rather small strip of land described as 28 feet on the west side bordering on Cedar Creek, 28.86 feet on the north, 31 feet on the east and 25.9 feet on the south containing an area of about 736 square feet. Nemir wrote several letters to Batts requesting him to refrain from traveling over his land, which Batts refused to do. At the trial, Batts admitted he did not have Nemir's permission to use the land. Batts counterclaimed for injunctive relief against Nemir's interfering with his use of the land in the event he prevailed in this lawsuit. During the trial, Nemir filed objections and exceptions to the court's charge which were overruled.

Trial was to a jury which decided six special issues, all in favor of Batts. The court, in accord with the jury's findings, rendered a verdict that Nemir take nothing and further granted Batts' plea for injunctive relief. Nemir's motion and amended motion for new trial were denied.

Nemir states 37 points of error, the first 20 of which complain of the trial court's error in admitting evidence and submitting issues to the jury pertaining to the ownership of the strip of land in question, when as a matter of law Batts, as a trespasser, could not contest the legal title to Nemir's property in a suit for trespass.

In his petition, Nemir alleged trespass and sought actual damages of $1,000 and exemplary damages of $5,000. Batts' answer denied he was a trespasser and pleaded an easement of the land in the public or the City of Navasota. To prove his pleadings of public or city rights, Batts introduced testimony that the Works Progress Administration (WPA) straightened the Cedar Creek bed in the mid-1930's and that the City of Navasota has maintained a parking lot on the tract in question since about this same time.

The questions then before this court are whether the change in the creek boundary divested Nemir of title and right of possession to this property and whether the land was dedicated to public use as a road or roadway as contended by Batts.

Ordinarily, a mere trespasser, not claiming title to the land in question, would be liable to the person in actual possession without any proof of title in an action of trespass. Section 56 Tex.Jur.2d Trespass § 26 (1964) states:

Actual possession constitutes sufficient title to authorize the possessor to recover both actual and exemplary damages. Proof of actual possession of the property by the plaintiff is held to establish, prima facie, that he is vested with title and has the right of possession, and the case thus made suffices, apparently, unless overcome or rebutted by proof that title is vested in the defendant.

In the case of *City of Victoria v. Schott*, 9 Tex.Civ.App. 332, 29 S.W. 681

(1895, no writ), a trespass action, the court stated:

> In the present case, if plaintiff owned the land, she had the right to recover for the trespass upon it. On the other hand, if defendant owned the land, or if plaintiff did not own it, defendant was not liable to plaintiff for taking gravel . . . As plaintiff had the right to prove ownership, in order to recover, defendant was entitled to disprove that fact, or to show ownership in itself, in order to defeat recovery. (citations omitted)

In this suit Batts contends he has a right to be on the property and possession is disputed because Batts alleges the public and the City of Navasota have an easement over the land. By his pleadings Nemir raises the question of his ownership of the disputed land "that extends to the center of Cedar Creek" thereby placing in issue the exact location of Cedar Creek. Batts had a right to disprove Nemir's ownership in order to prevent Nemir's recovery. The law regarding boundary changes due to movements in creek or river beds was stated by the Supreme Court of Texas in *Ross v. Green*, 135 Tex. 103, 139 S.W.2d 565 (1940):

> . . . "where a stream, which is a boundary, from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary and that the boundary remains as it was, in the center of the old channel"; and that when the stream thus "separates a considerable part of one piece of land and joins it to another, but in such manner that it can still be identified, the property of the soil so removed naturally continues vested in its former owner", just as before the avulsion.

The testimony adduced in our case presents a heated question of the true boundary based on the moving of the creek. Questions regarding the boundaries of the land are for the trier of fact. *Ross v. Green*, supra; *Cummer Mfg. Co. v. Copeland*, 35 S.W.2d 758 (Tex.Civ.App.—Texarkana 1931, no writ) We find no error in the court's admitting testimony pertaining to the land ownership. However, the jury's findings in response to special issues 2 and 2A with reference to the movement of Cedar Creek is against the great weight and preponderance of the evidence. These are the special issues which Nemir argues should not have been submitted because there is no evidence, insufficient evidence or the answers are against the great weight and preponderance of the evidence:

## SPECIAL ISSUE NO. 2

If you have answered Special Issue No. 1, We do, and only in that event; then answer Special Issue No. 2:

No. 2:

Do you find from a preponderance of the evidence that the channel of Cedar Creek within or along the boundary of the tract or parcel of land in controversy was moved to the North or to the South?

To which the Jury answered: "North"

## SPECIAL ISSUE NO. 2A

If you have answered Special Issue No. 2 'North' and only in that event; then answer Special Issue No. 2A.

Do you find from a preponderance of the evidence that the channel of Cedar Creek was moved 31 feet or more to the north?

To which the jury answered: "It was"

A summary of the evidence adduced shows conclusively that the WPA altered the banks of Cedar Creek in the mid-1930s. It is vigorously disputed, however, whether the creek was changed to the north or the south and the number of feet it was moved. None of the witnesses testifying in the case stated a specific distance that the creek was moved. Mr. H. R. Turner, a resident of Navasota since 1934, stated that while the WPA straightened out the creek considerably, the boundaries of Cedar Creek had not changed since he had been here. Mr. Roy Goodwin, a resident of Grimes County for sixty-one years, attempted to testify in regard to maps of the area from 1859, as to how the old creek compared to the new creek. Nemir's attorney objected because the specific date for the WPA work was not established in the question and the witness

stated he did not know how many feet and inches the exact edge of the creek would be from the back of the Nemir building. When Nemir's attorney continued his objection that the witness could not tell of his own knowledge exactly where the creek was before any work was done, and where it was afterwards, the court stated the objection went to the weight of the testimony and the jury could give it whatever consideration, if any, it chose to. Mr. Goodwin eventually testified that the new creek was moved to the north of the south bank of the old Cedar Creek. However, this testimony referred to a map which the witness subsequently stated he did not recognize. The court then struck all testimony regarding this exhibit and instructed the jury to disregard the same. Nemir admitted that the creek was changed although he denied emphatically that there was any major alteration to the property involved. Mr. Moody, a licensed surveyor and resident of Grimes County for sixty-six years, stated that although the creek was moved, he could not state where it was in 1931. When Nemir's attorney attempted to reconcile discrepancies between diagrams of the property from 1974 and 1978, both drawn by Mr. Moody, the witness admitted there was a whole lot of confusion. The discrepancy as pointed out in Nemir's brief is that the diagram from 1974 states the Nemir property extends for 250 feet to the center of the creek, while the 1978 diagram measured by Moody shows the property to extend only 179 feet to the center of the creek. Moody admitted that for the 250 foot measurement he simply copied this off an 1895 deed, the only evidence available to show previous creek boundaries, and that the early deed could have been incorrect. This discrepancy between the diagrams only shows the creek was moved to the south and as such negates Batts' theory of Nemir's non-ownership of the land. Mr. Gordon Hughey, a resident of Grimes County for more than forty years testified that prior to the movement of the creek, you could throw a sack full of trash from the back of a Penney store into the creek, and now you could not do this, and that the creek was straightened to avoid flooding problems.

From the foregoing summary of evidence it is clear that no witness furnished positive evidence for the jury to consider in answering the stated special issues. Hence, the jury's answers were predicated on speculation and conjecture. Nemir's points of error on issues 2 and 2A should be sustained.

By his next thirteen points of error, Nemir complains of special issue no. 3. He alleges the court erred in its definition of "dedication" and in omitting the words "as a roadway" from the issue and that there was no evidence or insufficient evidence to sustain the jury's answer thereto.

Our concern in addressing these points of error does not lie with the trial court's definition of dedication, which we find to be adequate. Not only did the court's instruction include the explanation that in order to constitute dedication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the land to public use and an acceptance thereof by the public, but there was also included an explanation of what would constitute dedication of a strip of land for public use as a road. We must find sufficient evidence to sustain that the subject strip of land was indeed dedicated to the public as a road. Nemir testified that he owned the land in question and introduced his deed as proof. His title to the land is not challenged by the City of Navasota, which Batts asserts acquired a dedicated public easement right across the disputed area. Navasota did not intervene in the suit and there is testimony by one of its former city managers that Nemir paid city taxes on the property. Nemir argues it was never his intent to dedicate this land to the public. He contends he had an agreement with the city to allow public parking, but had not given the land to the city. He stated he still pays taxes on this land, although he admits the city maintains the parking lot, including most repairs and trash pickup. Every witness in this case testified the public uses this area for parking and the area is notorious in the community for this purpose. Testimony also showed that the property

was never used for a roadway prior to Batts' purchase of his land in 1975, nor was this roadway necessary for access to Batts' property. The use of this land as a parking lot and a roadway are inconsistent in that Batts' large trucks would have to cross over the exact area where cars are parked in the lot to arrive at Batts' property.

 Appellant cites several cases interpreting the term dedication stating that there has to be some act by the owner which indicates unequivocally his purpose to dedicate the land in question and then there must be utilization by the public of the property for the purposes to which it was dedicated by the owner. *Wolf v. Brass*, 72 Tex. 133, 12 S.W. 159 (1888); *City of Houston v. Scanlan*, 120 Tex. 264, 37 S.W.2d 718 (1931). The intention of the owner must be shown by more than an omission or failure to act or acquiesce on the part of the owner. *Greenway Parks Home Owners Ass'n. v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235 (1958). Under the facts of our case and the authorities cited, we do not find that Batts has any right to create a road easement across Nemir's land by reason of dedication, prescription, limitation, necessity or estoppel, either for himself or the general public. At most the evidence shows that the general public has a permitted right to use the disputed area for a parking lot only. We sustain Nemir's points of error 21 through 33.

In view of our holding that there was no dedication of the land as a roadway, Nemir's last four points of error are not reached, since they deal with the granting of injunctive relief preventing Nemir from interfering with Batts' use of the area in dispute and whether Batts' trespass was intentional or malicious. Neither do we deem it necessary to rule upon the question of title to the disputed strip of land since no one challenged Nemir's title and our inquiry concerning it was only for the purpose of determining which party had the right to possession. Batts' unauthorized use of the land as a roadway constituted a trespass which we do not find to be malicious under the evidence adduced.

Accordingly, the judgment of the trial court is reversed, judgment is rendered for Robert Nemir and he is hereby awarded the nominal sum of one dollar ($1.00) as damages against Joe Mike Batts for the trespass. Judgment is further rendered that the writ of injunction served upon Robert Nemir, be, and the same is hereby dissolved.